**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHANIE HIGGINS, for herself and all others similarly situated,** ) ) ) | **Case No. 3:16-cv-02382-MEM** |
| ) **Plaintiff,** ) | |
| **v.** ) ) | **Hon. Malachy E. Mannion** |
| **BAYADA HOME HEALTH CARE, INC.** ) ) | |
| **Defendant.** ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION AND ISSUANCE OF NOTICE UNDER 29 U.S.C. § 216(b)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTS .................................................................................................................5

III.  ARGUMENT .....................................................................................................10

     A.     Consistent With The Remedial Purpose of The FLSA, The Legal Standard
            For Obtaining Conditional Certification Is Lenient.................................................11

     B.     Because Plaintiffs Easily Satisfy The "Modest Factual Showing" Standard,
            Conditional Certification Should Be Granted.........................................................14

     C.     Given the Remedial Purpose of The FLSA, The Court Should Exercise
            Its Discretion to Notify Clinicians of Their Right to Opt-In to This Action .........18

     D.     This Court Should Direct Bayada to Produce a List of Potential Class
            Members to Facilitate Notice.................................................................................20

     E.     Plaintiffs' Proposed Notice Is Fair, Adequate and Consistent With Court-
            Approved Notices in Other Similar Actions..........................................................20

IV.  CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altenbach v. The Lube Center, Inc.*,
No. 08-CV-2178, 2009 WL 3818750 (M.D. Pa. Nov. 13, 2009)............................................ 11

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) ......................................................................................................... 9

*Boyington v. Percheron Field Servs., LLC*,
No. 14-CV-90, 2015 WL 3756330 (W.D. Pa. June 16, 2015)................................................. 18

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
No. 09-CV-85J, 2009 WL 1361265 (W.D. Pa. May 14, 2009) ................................................ 15

*Carr v. Flowers Foods, Inc.*,
No. 15-CV-6391, 2017 WL 393604 (E.D. Pa. Jan. 26, 2017) ................................................ 18

*Craig v. Rite Aid Corp.*,
No. 08-CV-2317, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009) ......................................... 1, 12

*Elwell v. Univ. Hospitals Home Care Servs.*,
276 F.3d 832 (6th Cir. 2002)............................................................................................. 8, 17

*Ervin v. OS Rest. Servs., Inc.*,
632 F.3d 971 (7th Cir. 2011).................................................................................................. 4

*Essex v. Children's Place, Inc.*,
No. 15-CV-5621, 2016 WL 4435675 (D.N.J. Aug. 16, 2016).......................................... 15, 18

*Evans v. Lowe's Home Centers, Inc.*,
No. 03-CV-0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006) ...................................... 12, 13

*Gallagher v. Lackawanna Cty.*,
No. 07-CV-0912, 2008 WL 9375549 (M.D. Pa. May 30, 2008) ............................................ 12

*Garcia v. Nunn*,
No. 13-CV-6316, 2016 WL 1169560 (E.D. Pa. Mar. 25, 2016).............................. 3, 10, 18, 21

*Harhash v. Infinity West Shoes, Inc.*,
No. 10-CV-8285, 2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ............................................ 21

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y., 1997) ........................................................................ 18

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) ............................................................................... passim

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011) ........................................................................................... 19

*Knepper v. Rite Aid Corp.*,
    675 F.3d 249 (3d Cir. 2012) ............................................................................ 4

*Larsen v. Clearchoice Mobility, Inc.*,
    No. 11-CV-1701, 2011 WL 3047484 (N.D. Ill. July 25, 2011) ......................... 14, 20

*Lukas v. Advocate Health Care Network & Subsidiaries*,
    No. 14-CV-2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) ........................ 10, 11

*Lukas v. Advocate Health Care Network and Subsidiaries*,
    No. 14-CV-2740, 2014 WL 4783028 (N.D. Ill. Sept. 24, 2014) ...................... 10, 17

*Mitchell v. Robert DeMario Jewelry, Inc.*,
    361 U.S. 288 (1960) ....................................................................................... 19

*Moss v. Crawford & Co.*,
    201 F.R.D. 398 (W.D. Pa. 2000) .................................................................... 4

*Mott v. Driveline Retail Merch., Inc.*,
    23 F. Supp. 3d 483 (E.D. Pa. 2014) ............................................................. 15

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .......................................................................... 14

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
    27 F. Supp. 3d 567 (D.N.J. 2014) ................................................................. 21

*Sabol v. Apollo Grp., Inc.*,
    No. 09-CV-3439, 2010 WL 1956591 (E.D. Pa. May 12, 2010) ....................... 13

*Smiley v. E.I. Dupont De Nemours & Co.*,
    839 F.3d 325 (3d Cir. 2016) .......................................................................... 2

*Symczyk v. Genesis HealthCare Corp.*,
    656 F.3d 189 (3d Cir. 2011) ..................................................................... passim

*Taylor v. Pittsburgh Mercy Health Sys., Inc.*,
    No. 09-CV-377, 2009 WL 1324045 (W.D. Pa. May 11, 2009) ................................ 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................................ 9

*Viscomi v. Diner*,
    No. 13-CV-4720, 2016 WL 1255713 (E.D. Pa. Mar. 31, 2016) ................................ 13, 14, 19

*Zavala v. Wal-Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012) ...................................................................................... 12

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ................................................ passim

Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ........................................ 2

**Regulations**

29 C.F.R. § 541.300 .................................................................................................... 2

29 C.F.R. § 541.602 .................................................................................................... 6, 8

29 C.F.R. § 541.605 .................................................................................................... 6, 8

# I.    **INTRODUCTION**

Named Plaintiff Stephanie Higgins, along with the twenty-five Opt-in Plaintiffs from four states who have joined this action to date (collectively, "Plaintiffs"),[1] are home health care Clinicians who allege that Bayada Home Health Care, Inc. ("Defendant" or "Bayada") misclassified them as exempt from overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and failed to pay them at a time-and-a-half rate for hours worked beyond 40 per workweek as required by the FLSA.

Plaintiffs now seek to protect the rights of all similarly-situated Bayada Clinicians by notifying the following individuals that they may join this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b):

> All persons who worked as home health Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, or Medical Social Workers for Defendant at any location in the United States, were classified as exempt employees and were not paid overtime wages for hours worked beyond forty (40) per workweek during a period from three years prior to the entry of the conditional certification order until the date of final judgment in this matter (hereinafter "Clinicians").

Plaintiffs have attached a copy of their proposed Notice as Exhibit A.

The standard for obtaining notice under § 216(b) is very lenient. *See Craig v. Rite Aid Corp.*, No. 08-CV-2317, 2009 WL 4723286, at *2 (M.D. Pa. Dec. 9, 2009) ("The burden in this preliminary certification [stage] is light because the risk of error is insignificant"). Consistent with the broad remedial purpose of the FLSA, Plaintiffs need only make a "modest factual showing"

---

[1]    The Opt-In Plaintiffs are: Karen Karchner, Kindra Digwood, Andrea Bender, Christina Bagliore, Brian Meeker, Michelle Taffet, Kenneth Granahan, Kim Minutolo, Stephen Svetovich, Jessica Ryan, Mary Louise Degnan, Deborah Armus, Joseph Cuzzola, Janice Tedeschi, Karen Latham, Shannon Rakitis, Kathleen McFeeters, Katrina Goodrich, Stacey Powell, Peter Lally, Pamela Cox, Edna Bartia, Wendy Suchocki, Debra McDonald, and Jodi Baker. ECF Nos. 7, 16-18, 21, 23, 26-28, 30, 32-36, 38-44.

that they are similarly situated to the employees to whom they seek to send notice. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011) (reversed on other grounds, 133 S. Ct. 1523 (2013)). Under this lenient standard Plaintiffs must merely show "some evidence, beyond pure speculation" that an employer's policy affected named plaintiffs and other employees in the same manner. *Id.* at 193 (internal quotation omitted).

Here, Plaintiffs seek to distribute notice to Clinicians who were classified as exempt and were not paid overtime wages for hours worked beyond 40 in any given workweek. Plaintiffs submit declarations from the Named Plaintiff and ten opt-in Plaintiffs from four states who worked as Clinicians in the job titles at issue, supporting Plaintiffs' contention that, based on Defendant's standardized pay plan, Defendant uniformly misclassified its Clinicians as exempt employees in violation of the FLSA.[2] An employer may classify an employee as exempt only if the employer affirmatively proves both that the employee performs duties that fall within one of the exempt duty categories and that the employee was compensated on either a salary or fee basis. 29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.300; *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) (statutory exclusions are narrowly construed, and the employer bears the burden of establishing that an exemption applies).

Although the merits are not yet at issue, Plaintiffs allege that Defendant uniformly failed to pay them on a valid salary or fee basis as required by the FLSA and, instead, paid Plaintiffs based on a non-compliant hybrid compensation plan that is plainly inconsistent with their classification as exempt employees. Though Bayada characterized its pay plan as a salary-plus-

---

[2] Plaintiff further alleges that she and a class of others similarly situated were misclassified and denied proper overtime payments in violation of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.* ("PMWA"). Plaintiff's state law claims are not at issue in this Motion.

productivity bonus system, in actuality Plaintiffs and others similarly situated were never paid a guaranteed salary. Instead, Plaintiffs were paid a predetermined rate for each productivity point they earned, with the point values assigned to each task depending on the length of time the tasks were expected to take. In other words, Bayada's pay plan was a mere proxy for hourly compensation window dressed as a salary. Because Bayada's Clinicians were not paid on a valid fee or salary basis for all of their work, they may not be lawfully treated as exempt employees, and all of their hours worked beyond 40 each week should be paid at a time-and-a-half rate.

Prompt facilitation of court-approved notice is critical. Unlike a Rule 23 class action, the statute of limitations for putative FLSA class members is not tolled until members of the collective "opt-in" to the suit. *See* 29 U.S.C. § 216(b). This feature distinguishes the collective action mechanism under § 216(b) from the class action mechanism under Rule 23, where, once a class is certified, those not wishing to be included in the class must affirmatively opt-out. *Garcia v. Nunn*, No. 13-CV-6316, 2016 WL 1169560, at *2 (E.D. Pa. Mar. 25, 2016). The vast majority of Clinicians who work for Defendant in 22 states are unaware of the existence of this action or their right to pursue a claim for unpaid overtime wages. In order to ensure their rights are protected, these employees must be provided prompt notice of the pendency of this case. Otherwise, many of their claims may be barred by the short FLSA statute of limitations solely by the passage of time. As aptly pointed out by the Supreme Court:

> Congress has stated its policy that ADEA [and FLSA] plaintiffs should have the opportunity to proceed collectively. A collective action allows age discrimination [and FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.
>
> These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative

permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (hereinafter "*Hoffmann-La Roche*").[3]

Finally, notice should issue to advance the broad remedial purpose of the FLSA and prevent further duplicative litigation. *See Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("the primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity"). Because notice under § 216(b) is plainly warranted given Defendant's uniform practice of paying Clinicians through a hybrid pay scheme that does not meet the FLSA standard for exempt classification, this Court should authorize notice to inform these workers of their rights and their ability to join this action.[4]

---

[3]  The plaintiff in *Hoffmann-La Roche* brought an age discrimination case under the Age Discrimination in Employment Act that incorporates the enforcement and certification provisions of the FLSA. *Id.* at 167.

[4]  As Plaintiff has also filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure with respect to her PMWA claims, Plaintiff will bring a separate motion for Rule 23 class certification after the completion of substantial discovery. It is well-established that courts will certify combined actions, including both an opt-in FLSA collective claim and an opt-out state wage law Rule 23 class claim. *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d Cir. 2012) (Rules Enabling Act does not bar certification of an opt-out class action based on state employment-law claims paralleling the FLSA); *see also Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (finding "there is no insurmountable tension between the FLSA and Rule 23(b)(3)").

## II. FACTS

Bayada is headquartered in Moorestown, New Jersey and employs over 18,000 workers who provide home health care services to patients in 22 states.[5] Bayada is an "employer" as defined by 29 U.S.C. § 203(d).[6]

Bayada's operations are separated into two specialty practice areas, known as "home care" and "home health."[7] Plaintiffs, and others similarly situated, are or were employed as Clinicians in Defendant's home health division, a group that includes Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists and Medical Social Workers.[8] Named Plaintiff Stephanie Higgins is a Registered Nurse ("RN") who was employed by Bayada in Pittson, Pennsylvania as a home health RN (a/k/a "Field Staff RN") from September 4, 2012 through September 27, 2016.[9] Other Opt-In Plaintiffs were employed as home health RNs, Physical Therapists, Occupational Therapists and Speech Pathologists in Pennsylvania, Florida, Hawaii and New Jersey.[10] The primary duties of all Clinicians include providing care to patients in their

---

[5]    Ex. C, Declaration of Stephanie Higgins ("Higgins Decl.") ¶ 3; *see also* https://www.bayada.com.

[6]    *See* ECF No. 1 ("Compl.") ¶ 36.

[7]    Ex. D, Deposition of Christopher David ("David Tr.") 25:9-17. David was deposed on March 9, 2017 in *Reed, et al. v. Bayada Home Health Care, Inc.*, Case No. 160800491 (1st Judicial Dist. of Pa.).

[8]    David Tr. 26:23-27:13.

[9]    Higgins Decl. ¶¶ 2-3.

[10]    *See* Ex. E, Declaration of Deborah Armus ("Armus Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an RN in New Jersey from August 2013 to June 2014); Ex. F, Declaration of Christina Bagliore ("Bagliore Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an RN in Pennsylvania from September 2015 through August 2016); Ex. G, Declaration of Joseph Cuzzola ("Cuzzola Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as a Physical Therapist in Florida from October 2011 to the present); Ex. H, Declaration of Karen Latham ("Latham Decl.") at ¶¶ 2-3 (opt-in Plaintiff

homes; traveling from one patient's home to the next; documenting and charting observations of patients' health, treatment, medication, education and status; communicating with patients, physicians and other medical care providers about scheduling, physician orders and patient care; and attending regular meetings and training sessions.[11]

Bayada's centralized Human Resources and Compliance divisions are located at its New Jersey headquarters.[12] These divisions are responsible for issuing company-wide policies, handbooks and orientation materials.[13] All the policies prepared by corporate headquarters are hosted on Bayada's internal website and accessible by management-level employees.[14]

Rather than paying Clinicians on a valid salary or fee basis, as required by the FLSA and defined in 29 C.F.R. §§ 541.602 and 541.605, Bayada's uniform compensation policy violates the

---

employed as a Physical Therapist in Florida from June 2014 to the present); Ex. I, Declaration of Kathleen McFeeters ("McFeeters Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an Occupational Therapist in Hawaii from November 2014 to December 2016); Ex. J, Declaration of Shannon Rakitis ("Rakitis Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an RN in New Jersey from August 2013 to the present); Ex. K, Declaration of Michele Taffet ("Taffet Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an Occupational Therapist in New Jersey from March 2013 to July 2014 and from December 2014 to the present); Ex. L, Declaration of Kindra Digwood, ("Digwood Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as a Speech Pathologist in Pennsylvania from April 2012 to September 2015); Ex. M, Declaration of Edna Bartia ("Bartia Decl.") at ¶¶ 2-3 (opt-in Plaintiff employed as an RN in Florida from September 2012 to the present); Ex. N, Declaration of Stephen Svetovich ("Svetovich Decl.") ¶¶ 2-3 (opt-in Plaintiff employed as an Occupational Therapist in Pennsylvania from 2007 to December 2014).

[11]     Compl. ¶ 11; Higgins Decl. ¶¶ 4, 10-11; Armus Decl. ¶¶ 4, 10-11; Bagliore Decl. ¶¶ 4, 10-11; Cuzzola Decl. ¶¶ 4, 12; Latham Decl. ¶¶ 4, 11; McFeeters Decl. ¶¶ 4, 9, 11; Rakitis Decl. ¶¶ 4, 11-12; Taffet Decl. ¶¶ 4, 10-11; Digwood Decl. ¶¶ 4, 10-11; Bartia Decl. ¶¶ 4, 11-12; Svetovich Decl. ¶¶ 4, 10-11.

[12]     David Tr. 30:10-15; 31:17-22.

[13]     David Tr. 32:8-33:4; 64:7-19.

[14]     David Tr. 33:12-19; 34:18-35:8.

FLSA in at least two ways. First, Bayada's plan is based primarily on a productivity point system that assigns point values to various tasks and visit types depending on the length of time they take or are expected to take.[15] Under this system, Plaintiffs' pay is determined by multiplying the number of points earned each week by a "base visit rate."[16] This system is based on a matrix that, for example, for RNs attributes one point (or the base visit rate) for a routine home visit, one point for an evaluation visit, 1½ points for a recertification visit or a resumption of care visit, and two points for a "start of care" visit.[17] These visit rates correlate with the average duration for each visit type, and Plaintiffs assert that the rates were set based on time estimates for each visit type.[18]

In addition to the rates for each type of visit, Bayada assigns point values to non-visit related work, including time spent attending regular staff meetings, case conferences, in-service training, and occasional office work.[19] The point values attributed to these tasks are based on the time they actually took, and if, for instance, a staff meeting ran longer than expected, Bayada would increase the point value assigned to that meeting.[20] Accordingly, Plaintiffs' pay served as

---

[15]    Compl. ¶¶ 14-15; Higgins Decl. ¶¶ 8-10; Armus Decl. ¶¶ 7-8, 10; Bagliore Decl. ¶¶ 7-8, 10; Cuzzola Decl. ¶¶ 8-9, 11; Latham Decl. ¶¶ 8-9; McFeeters Decl. ¶¶ 7-9; Rakitis Decl. ¶¶ 8, 10-11; Taffet Decl. ¶¶ 7-8, 10; Digwood Decl. ¶¶ 7-8, 10; Bartia Decl. ¶¶ 8-9, 11; Svetovich Decl. ¶¶ 7-9.

[16]    Compl. ¶ 14; Higgins Decl. ¶ 9 (Higgins' base visit rate was $41.75); Armus Decl. ¶ 8; Bagliore Decl. ¶ 8; Cuzzola Decl. ¶ 9; Latham Decl. ¶ 9; McFeeters Decl. ¶ 8; Rakitis Decl. ¶ 10; Taffet Decl. ¶ 8; Digwood Decl. ¶ 8; Bartia Decl. ¶ 9; Svetovich Decl. ¶ 8.

[17]    Higgins Decl. ¶ 9; Armus Decl. ¶ 9; Bagliore Decl. ¶ 8; Rakitis Decl. ¶ 10; Bartia Decl. ¶ 9.

[18]    Higgins Decl. ¶ 9; Armus Decl. ¶ 8; Bagliore Decl. ¶ 8; Cuzzola Decl. ¶ 9; Latham Decl. ¶ 9; McFeeters Decl. ¶ 8; Rakitis Decl. ¶ 10; Taffet Decl. ¶ 8; Digwood Decl. ¶ 8; Bartia Decl. ¶ 9.

[19]    Higgins Decl. ¶ 10; Armus Decl. ¶ 10; Bagliore Decl. ¶ 10; Cuzzola Decl. ¶ 11; McFeeters Decl. ¶ 9; Rakitis Decl. ¶ 11; Taffet Decl. ¶ 10; Digwood Decl ¶ 10; Bartia Decl. ¶ 11.

[20]    Bagliore Decl. ¶ 10; Digwood Decl. ¶ 10; Bartia Decl. ¶ 11; McFeeters Decl. ¶ 9.

proxy for hourly compensation because it was based on the number of hours worked rather than the accomplishment of a given single task as required by the FLSA's fee basis regulation. 29 C.F.R. § 541.605; *see also, e.g.*, *Elwell v. Univ. Hospitals Home Care Servs.*, 276 F.3d 832, 839 n.3 (6th Cir. 2002) (finding that a plaintiff could maintain an FLSA claim upon evidence that the employer's use of a fee based compensation plan was nothing more than a proxy for an hourly wage).

Likewise, Bayada's pay plan does not provide Clinicians with a guaranteed salary.[21] For example, if low patient availability prevents Clinicians from meeting their weekly productivity point quota, Bayada penalizes Clinicians by requiring them to supplement the gap in productivity with earned paid time off ("PTO") hours.[22] Once Clinicians exhaust their available PTO hours, Bayada does not pay Clinicians their full salary or otherwise compensate them for the gap in productivity, instead paying only for the actual points they earned.[23]

Thus, Bayada's purported "guaranteed salary" fails to meet the salary basis requirement because Plaintiffs do not receive their salary if they do not meet their productivity quota. 29 C.F.R. § 541.602(a) (a valid salary cannot be subject to reduction because of variations in the quality or

---

[21]    Higgins Decl. ¶ 9; Armus Decl. ¶ 8; Bagliore Decl. ¶ 8; Cuzzola Decl. ¶ 9; Latham Decl. ¶ 9; McFeeters Decl. ¶ 8; Rakitis Decl. ¶ 10; Taffet Decl. ¶ 8; Digwood Decl. ¶ 8; Bartia Decl. ¶ 9; Svetovich Decl. ¶ 8.

[22]    Armus Decl. ¶ 9; Bagliore Decl. ¶ 9; Cuzzola Decl. ¶ 10; Latham Decl. ¶ 10; Rakitis Decl. ¶ 9; Taffet Decl. ¶ 9; Digwood Decl. ¶ 9; Bartia Decl. ¶ 10; Svetovich Decl. ¶ 9.

[23]    Bagliore Decl. ¶ 9; Cuzzola Decl. ¶ 10; Latham Decl. ¶ 10; Bartia Decl. ¶ 10; Svetovich Decl. ¶ 9.

quantity of the work performed). At any given time, Bayada has employed hundreds of Clinicians nationwide under this pay scheme.[24]

Bayada, moreover, does not accurately account for all of the time its Clinicians work and does not provide compensation beyond the visit rates for numerous tasks Clinicians perform that are related to patient care. For example, Bayada fails to adequately track or pay additional wages for time spent completing patient documentation ("charting"), preparing for visits, traveling between patients' homes, coordinating care with schedulers, managers, patients, physicians, pharmacists, or other medical care providers by e-mail, fax, phone, voicemail and text messaging.[25] To complete all of their duties, Clinicians are routinely required to work more than 40 hours, and at times as many as 60 hours, in given workweeks.[26] As a result, Bayada has failed in its clear duty to make or maintain accurate records of all the time its Clinicians work.[27] *See* 29 U.S.C. § 211(c); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (employer has statutory duty to keep proper records), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

---

[24]    Higgins Decl. ¶ 12; Armus Decl. ¶ 12; Bagliore Decl. ¶ 12; Cuzzola Decl. ¶ 13; Latham Decl. ¶ 12; McFeeters Decl. ¶ 12; Rakitis Decl. ¶ 13; Taffet Decl. ¶ 12; Digwood Decl. ¶ 12; Bartia Decl. ¶ 13; Svetovich Decl. ¶ 12.

[25]    Compl. ¶ 16; Higgins Decl. ¶ 11; Armus Decl. ¶ 11; Bagliore Decl. ¶ 11; Cuzzola Decl. ¶ 12; Latham Decl. ¶ 11; Rakitis Decl. ¶ 12; Taffet Decl. ¶ 11; Digwood Decl. ¶ 11; Bartia Decl. ¶ 12; Svetovich Decl. ¶ 11.

[26]    Higgins Decl. ¶ 5; Armus Decl. ¶ 5; Bagliore Decl. ¶ 5; Cuzzola Decl. ¶ 5; Latham Decl. ¶ 5; McFeeters Decl. ¶ 5; Rakitis Decl. ¶ 5; Taffet Decl. ¶ 5; Digwood Decl. ¶ 5; Bartia Decl. ¶ 5; Svetovich Decl. ¶ 5.

[27]    Compl. ¶¶ 19, 48, 64; Higgins Decl. ¶ 13; Armus Decl. ¶ 13; Bagliore Decl. ¶ 13; Cuzzola Decl. ¶ 13; Latham Decl. ¶ 13; McFeeters Decl. ¶ 13; Rakitis Decl. ¶ 14; Taffet Decl. ¶ 13; Digwood Decl. ¶ 13; Bartia Decl. ¶ 14; Svetovich Decl. ¶ 13.

Plaintiffs and Bayada's other Clinicians are similarly-situated with respect to their overtime claims because they had the same job requirements, were subject to the same compensation policies and were subject to Bayada's common practice of failing to pay time-and-one-half for all hours worked beyond 40 per week in violation of the FLSA.[28]

### III.  **ARGUMENT**

This Court should direct that notice be sent to all persons Bayada has employed as Clinicians within the past three years who have not yet joined this action.[29]  All such employees are similarly-situated with respect to the FLSA claims in this action because they were subjected to a common policy to deprive them of overtime wages when they worked more than 40 hours in any given workweek.  Indeed, conditional FLSA certification (as well as Rule 23 class certification and final FLSA certification) has been granted in collective actions filed on behalf of similar classes of Clinicians who alleged virtually-identical overtime violations.  *See* Ex. B, Minute Order and Court Tr. entered in *Hauser v. Alexian Brothers Medical Center, et al.*, Case No. 15 Civ. 6462 (N.D. Ill. Jan. 6, 2016) (granting conditional FLSA certification); *Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14-CV-2740, 2014 WL 4783028, at *3 (N.D. Ill. Sept. 24, 2014) (granting conditional FLSA certification); *see also Lukas v. Advocate Health Care Network & Subsidiaries*, No. 14-CV-2740, 2015 WL 5006019, at *1 (N.D. Ill. Aug. 19, 2015) (granting Rule 23 class certification and final FLSA certification).  Specifically here, as in *Hauser* and *Lukas*, all

---

[28]     Compl. ¶¶ 11, 13-16, 18; Higgins Decl. ¶¶ 4-6, 9-12; Armus Decl. ¶¶ 4-6, 8-11; Bagliore Decl. ¶¶ 4-6, 8-11; Cuzzola Decl. ¶¶ 4-6, 9-12; Latham Decl. ¶¶ 4-6, 9-11; McFeeters Decl. ¶¶ 4-6, 8-9, 11; Rakitis Decl. ¶¶ 4-6, 9-12; Taffet Decl. ¶¶ 4-6, 8-11; Digwood Decl. ¶¶ 4-6,8-11; Bartia Decl. ¶¶ 4-6, 9-12; Svetovich Decl. ¶¶ 4-6; 8-12.

[29]     The statute of limitations under the FLSA is three years where, as here, Plaintiffs allege a willful violation. 29 U.S.C. § 255 (a); *see, e.g., Garcia*, 2016 WL 1169560 at *4 (authorizing notice to a conditional FLSA class of employees who worked within three years prior to the date of class notice).

Clinicians were classified as exempt but compensated under a pay scheme that did not comport with either the salary basis or fee basis requirements for exemption from overtime. *Lukas*, 2015 WL 5006019 at *4 ("The practice or course of conduct Plaintiffs complain of is Advocate's policy of classifying Clinicians as exempt yet paying them with a combination of fee-based and hourly rates. . . . [T]his pay scheme applies to all Clinicians.").

A. **Consistent With The Remedial Purpose of The FLSA, The Legal Standard for Obtaining Conditional Certification Is Lenient.**

Under the FLSA, an employee may bring an action on his or her own behalf and for all others "similarly situated." 29 U.S.C. § 216(b). However, in order to be covered by the suit, potential participants in the FLSA collective action must affirmatively "opt-in" to the case. *Id.*; *Symczyk*, 656 F.3d at 192. The statute of limitations for each potential class member is not tolled until he or she individually opts-in to the litigation. 29 U.S.C. § 256(c). Therefore, to protect an individual's FLSA rights from being diminished by lack of notice, the Supreme Court has held that district courts should facilitate the issuance of a notice informing potential opt-in plaintiffs of the pending FLSA collective action. *Hoffmann-La Roche*, 493 U.S. at 170; *see also Taylor v. Pittsburgh Mercy Health Sys., Inc.*, No. 09-CV-377, 2009 WL 1324045, at *1 (W.D. Pa. May 11, 2009) ("'time [is] of the essence' for purposes of FLSA notice '[b]ecause the . . . statute of limitations is not tolled [until] a potential plaintiff opts in[to]' the proposed collective action") (citations omitted); *Altenbach v. The Lube Center, Inc.*, No. 08-CV-2178, 2009 WL 3818750, at *1 (M.D. Pa. Nov. 13, 2009) ("district courts have allowed the conditional certification of a class of putative plaintiffs before significant discovery takes place because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action"). Further, the Supreme Court has held that district courts have a "managerial responsibility to

oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 170-71.

Courts have routinely found that facilitation of notice serves the important policy goals of preserving judicial economy, reducing duplicative litigation, and lowering the cost of litigation. *See id.* (finding that "accurate and timely" notice to class members serves the twin judicial policies of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."). The Supreme Court has emphasized that collective actions further the remedial purpose of the FLSA by allowing individual employees to pool their resources to enforce their rights. *Id.* at 170. At the same time, collective actions serve the interest of the courts and of all parties by providing an efficient means to resolve all common issues resulting from an unlawful policy or practice in a single proceeding. *Id.*; *Evans v. Lowe's Home Centers, Inc.*, No. 03-CV-0438, 2006 WL 1371073, at *5 (M.D. Pa. May 18, 2006) (collective actions enable the "lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact."); *also Gallagher v. Lackawanna Cty.*, No. 07-CV-0912, 2008 WL 9375549, at *7 (M.D. Pa. May 30, 2008) (same).

Significantly, conditional certification does not extend beyond the preliminary issue of whether notice should be sent to the potential class members. Indeed, the Third Circuit has repeatedly observed that the only consequence of conditional certification is the issuance of notice to potential class members. *See Symczyk*, 656 F.3d at 194; *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). Whether the lawsuit ultimately proceeds as a collective action is determined later in the litigation after the benefit of discovery. *Symczyk*, 656 F.3d at 193. Because "conditional certification" concerns merely the issuance of notice, courts should err in favor of providing notice to employees. *See Craig*, 2009 WL 4723286 at *2 ("The burden in this

preliminary certification [stage] is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification and the court will have the opportunity to deny final certification.").

Consistent with the above principles, FLSA conditional certification is liberally granted. *See Sabol v. Apollo Grp., Inc.*, No. 09-CV-3439, 2010 WL 1956591, at *3 (E.D. Pa. May 12, 2010) ("Presumably because of the threshold requirement's leniency, the initial determination usually results in conditional certification."); *Evans*, 2006 WL 1371073, at *3 ("Typically, the first step results in an automatic conditional certification because of the relatively light standard and minimal evidence.").

Indeed, in *Symczyk* the Third Circuit clarified the standard applied to adjudicate a motion for conditional certification, finding that:

> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard – which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions – best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[ ] the contours of [a collective] action at the outset."

*Symczyk*, 656 F.3d at 192-93 (citations omitted). At this early stage, the sole question is whether Plaintiffs provide "modest" evidence that the proposed class "consists of similarly situated employees who were collectively the victims of a single decision, policy, or plan." *Viscomi v. Diner*, No. 13-CV-4720, 2016 WL 1255713, at *4 (E.D. Pa. Mar. 31, 2016) (internal quotation omitted).

In an FLSA misclassification case, plaintiffs meet their low burden merely with some showing that there are other employees who are similarly situated with respect to their job

requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, and who are classified as exempt pursuant to a common policy or scheme. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Plaintiffs may accomplish this by providing "some factual support . . . in the form of affidavits, declarations, deposition testimony, or other documents" of a common policy to which they and other similarly situated employees were subjected. *Viscomi*, 2016 WL 1255713 at *4 (internal quotation omitted).

In meeting this modest burden, discovery is therefore not required. In fact, courts have explicitly rejected arguments that discovery should take place before the issuance of notice because the broad remedial purpose of the FLSA is best served by issuing notice before discovery. *See, e.g.*, *Larsen v. Clearchoice Mobility, Inc.*, No. 11-CV-1701, 2011 WL 3047484, at *2 (N.D. Ill. July 25, 2011). Here, Plaintiffs have clearly met their low burden with sworn declarations representing a cross-section of Clinicians with the relevant job titles who worked in four different states and as far away as Hawaii. Plainly, Plaintiffs have provided more than sufficient evidence that other similarly-situated potential class members exist who are entitled to notice under the FLSA.

### B. Because Plaintiffs Easily Satisfy The "Modest Factual Showing" Standard, Conditional Certification Should Be Granted.

Plaintiffs contend that Bayada willfully engaged in a practice of misclassifying Clinicians as exempt from the FLSA's overtime requirements and failed to pay them at a time-and-a-half rate for all hours worked over 40 in any given workweek. At this preliminary notice stage, rather than evaluate the merits of Plaintiffs' claims, the Court need only determine whether Plaintiffs and the class members are similarly situated with respect to their claims. *Viscomi*, 2016 WL 1255713 at *4 (the court does not delve into the merits of a case when ruling on a motion for conditional certification); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-CV-85J, 2009 WL 1361265, at *3

(W.D. Pa. May 14, 2009) (at conditional certification a court does not weigh the merits, resolve factual disputes, or make credibility determinations). In determining whether Plaintiffs have made a sufficient showing to warrant the issuance of notice, the relevant issue is not whether Plaintiffs and potential opt-in plaintiffs are identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week. *Essex v. Children's Place, Inc.*, No. 15-CV-5621, 2016 WL 4435675, at *5 (D.N.J. Aug. 16, 2016) (plaintiffs are not required to show that their positions are identical to the position of other potential class members); *cf. Mott v. Driveline Retail Merch., Inc.*, 23 F. Supp. 3d 483, 490 (E.D. Pa. 2014) (finding "defense that Plaintiff's claims are too individualized to be litigated collective [sic] is unavailing at" the conditional certification stage).

Here, Plaintiffs have easily satisfied and surpassed their burden of making a "modest factual showing." Notwithstanding the absence of virtually any discovery, Plaintiffs have "produce[d] some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which [Defendant's] alleged policy affected [them] and the manner in which it affected other [Clinicians]." *Symczyk*, 656 F.3d at 193. The record plainly demonstrates that Plaintiffs were the victims of a common compensation policy that they allege violates the FLSA. Plaintiff's Complaint sets forth detailed allegations that she and similarly situated employees, twenty-five of whom have already joined the action, claim to have been subjected to common compensation practices and were the victims of a common scheme perpetuated by Bayada to classify its Clinicians as exempt employees.

Plaintiffs' evidence reveals that at any given time, hundreds of Clinicians employed by Bayada are classified as exempt and predominantly compensated pursuant to Bayada's

productivity point system.[30]  Specifically, the Named Plaintiff along with ten additional Opt-in Plaintiff Declarants ("Declarants") submit declarations in which they attest to Bayada's standardized company-wide compensation policy whereby Clinicians received no guaranteed salary and were paid on a productivity point system that served as a proxy for hourly compensation.[31]  They also attest to not receiving pay for hours worked over 40 in any given workweek at a time-and-a-half rate, as required under the FLSA.[32]  Rather, Plaintiffs were required to use accrued PTO hours to supplement any gap in productivity and, if their PTO was exhausted, they were only paid for the productivity points earned – not a guaranteed salary.[33]

These circumstances were not experienced by the Named Plaintiff and Declarants alone. Numerous other Bayada Clinicians were subject to the same company compensation practices throughout Bayada's operations nationwide and thus are similarly situated to the Named

---

[30]  *See* Higgins Decl. ¶¶ 8-9, 12; Armus Decl. ¶¶ 7-9, 12; Bagliore Decl. ¶¶ 7-9, 12; Cuzzola Decl. ¶¶ 8-10, 13; Latham Decl. ¶¶ 8-10, 12; McFeeters Decl. ¶¶ 7-8, 12; Rakitis Decl. ¶¶ 8-10, 13; Taffet Decl. ¶¶ 7-9, 12; Digwood Decl. ¶¶ 7-9, 12; Bartia Decl. ¶¶ 8-10, 13; Svetovich Decl. ¶¶ 7-8, 12.

[31]  Compl. ¶¶ 1, 8, 13-15; Higgins Decl. ¶¶ 8-10; Armus Decl. ¶¶ 7-10; Bagliore Decl. ¶¶ 7-10; Cuzzola Decl. ¶¶ 8-11; Latham Decl. ¶¶ 8-10; McFeeters Decl. ¶¶ 7-9; Rakitis Decl. ¶¶ 8-11; Taffet Decl. ¶¶ 7-10; Digwood Decl. ¶¶ 7-10; Bartia Decl. ¶¶ 8-11; Svetovich Decl. ¶¶ 7-8.

[32]  Compl. ¶¶ 8, 46; Higgins Decl. ¶ 5; Armus Decl. ¶ 5; Bagliore Decl. ¶ 5; Cuzzola Decl. ¶ 5; Latham Decl. ¶ 5; McFeeters Decl. ¶ 5; Rakitis Decl. ¶ 5; Taffet Decl. ¶ 5; Digwood Decl. ¶ 5; Bartia Decl. ¶ 5; Svetovich Decl. ¶ 5.

[33]  Armus Decl. ¶ 9; Bagliore Decl. ¶ 9; Cuzzola Decl. ¶ 10; Latham Decl. ¶ 10; Rakitis Decl. ¶ 9; Taffet Decl. ¶ 9; Digwood Decl. ¶ 9; Bartia Decl. ¶ 10 Svetovich Decl. ¶ 9.

Plaintiff.[34]  The evidence also demonstrates that Plaintiffs performed similar job duties.[35]  Thus, Plaintiffs are similarly-situated with respect to the challenged compensation practice at issue here.

While the merits are not yet at issue, the Sixth Circuit held that a similar clinician pay policy was incompatible with the claimed exemption from overtime. *Elwell*, 276 F.3d at 838-39. In *Elwell*, the court found that the practice of paying field nurses on a combined per visit and hourly basis does not meet the regulatory definition of a "fee basis" if "it contains any component that ties compensation to the number of hours worked." *Id.* at 838 (concluding that defendant's "compensation plan . . . does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task") (internal quotation omitted).  The *Elwell* court further held that a plaintiff could maintain an FLSA claim upon evidence that the employer's use of a fee-based compensation plan was nothing more than a proxy for an hourly wage. *Id.* at 839 n.3.  The compensation practice challenged here thus violates the FLSA, and Plaintiffs are similarly situated with respect to their claim that they were unlawfully denied overtime for that reason.

Courts have repeatedly issued FLSA notice in cases where employees seeking compensation for unpaid wages have presented evidence similar to that submitted in this case. *See, e.g.*, *Lukas*, 2014 WL 4783028 at *3 (holding that FLSA notice to 234 home health care clinicians was proper based on the declarations of three employees).  Moreover, Plaintiffs have

---

[34]     Compl. ¶¶ 1-2, 11, 13-16; 22-26; Higgins Decl. ¶¶ 3, 8-12; Armus Decl. ¶¶ 3, 7-12; Bagliore Decl. ¶¶ 3, 7-12; Cuzzola Decl. ¶¶ 3, 8-13; Latham Decl. ¶¶ 3, 8-12; McFeeters Decl. ¶¶ 3, 7-12; Rakitis Decl. ¶¶ 3, 8-13; Taffet Decl. ¶¶ 3, 7-12; Digwood Decl. ¶¶ 3, 7-12; Bartia Decl. ¶¶ 3, 8-13; Svetovich Decl. ¶¶ 3, 7-12.

[35]     Compl. ¶¶ 11, 13-16; Higgins Decl. ¶¶ 4-6, 11; Armus Decl. ¶¶ 4-6, 11; Bagliore Decl. ¶¶ 4-6, 11; Cuzzola Decl. ¶¶ 4-6, 12; Latham Decl. ¶¶ 4-6, 11; McFeeters Decl. ¶¶ 4-6, 11; Rakitis Decl. ¶¶ 4-6, 12; Taffet Decl. ¶¶ 4-6, 11; Digwood Decl. ¶¶ 4-6, 11; Bartia Decl. ¶¶ 4-6, 12; Svetovich Decl. ¶¶ 4-6, 11.

met their burden to support notice to Clinicians employed by Bayada nationwide. Plaintiffs' submission of testimony from opt-in Plaintiffs who worked in Pennsylvania, New Jersey, Florida and Hawaii demonstrates that all Bayada Clinicians performed similar job duties; were paid according to a similar, if not exactly the same, productivity point system and not a valid salary; were unlawfully classified as exempt from the overtime requirements of the FLSA; and were denied overtime compensation. *See, e.g.*, *Essex*, 2016 WL 4435675 at *5 (granting conditional certification of a nationwide collective where plaintiffs worked in seven states, were subject to a uniform job description, were required to adhere to corporate policies, consistently worked more than 40 hours in given workweeks and did not receive overtime compensation); *Garcia*, 2016 WL 1169560 at *3 (evidence was sufficient to meet the "modest factual showing" requirement for nationwide notice where plaintiffs worked in Pennsylvania and occasionally in four other states); *see also Carr v. Flowers Foods, Inc.*, No. 15-CV-6391, 2017 WL 393604, at *3 n.4 (E.D. Pa. Jan. 26, 2017) (declining to limit notice to locations where the named or opt-in plaintiffs who submitted declarations operate); *Boyington v. Percheron Field Servs., LLC*, No. 14-CV-90, 2015 WL 3756330, at *2 (W.D. Pa. June 16, 2015) (defendant's wide geographical presence did not result in any significant disparities in job duties to preclude conditional certification). This evidence is more than sufficient to meet the "modest factual showing" requirement to justify conditional certification. Accordingly, the Court should grant this motion and authorize notice to potential opt-in plaintiffs advising them of their right to join this lawsuit.

### C. Given The Remedial Purpose of The FLSA, The Court Should Exercise Its Discretion to Notify Clinicians of Their Right to Opt-In to This Action.

It has long been recognized "that district courts have the discretionary power to authorize the sending of notice to potential opt-in plaintiffs in a collective action brought pursuant to § 216(b) of the FLSA." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y., 1997), *citing*

*Hoffmann-La Roche*, 493 U.S. at 170; *also Viscomi*, 2016 WL 1255713 at *8 (district courts have the power to authorize notice of the action to similarly situated employees). As the Supreme Court observed when discussing the importance of providing notice to employees, "The broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffmann-La Roche*, 493 U.S. at 173. Sending notice, and thereby encouraging employees to enforce their rights, helps advance the FLSA's enforcement mechanism, which relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 2 (2011), *quoting Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). However, these benefits cannot be realized if the employees who suffered from the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in. *Hoffmann-La Roche*, 493 U.S. at 170. Simply put, employees cannot vindicate rights of which they are not aware.

Without court-supervised notice, Plaintiffs have no effective way to provide notice to these other Clinicians, and Defendant will have succeeded in keeping its other employees in the dark about their rights. Put simply, absent court-facilitated notice, there is no ready mechanism for other Clinicians to learn about their rights.

Issuing notice now will advance the interests both of potential class members and the Court. In FLSA cases, unlike Rule 23 actions, class members do not receive the benefit of automatic tolling when a complaint is filed; instead, each employee's limitations period continues to run unless and until she opts in. 29 U.S.C. §§ 255(a), 256. Thus, speed is of the essence, as with each passing day, every potential class member suffers harm in the form of newly time-barred claims. Because "delaying the notification procedure . . . could have the undesirable effect of preventing

potential opt-in plaintiffs from presenting their FLSA claims," the FLSA's broad remedial intent favors early notice to potential plaintiffs. *Larsen*, 2011 WL 3047484 at *2. The most effective way to ensure that Clinicians are fully informed of their rights so that they can act on a timely basis is through court-supervised notice. But without timely notice, Clinicians will not have the opportunity to vindicate their rights.

**D.** **This Court Should Direct Bayada to Produce a List of Potential Class Members to Facilitate Notice.**

As discussed above, all persons Bayada employed as Clinicians within the three-year limitations period are "similarly situated" employees for purposes of the FLSA. Thus, the identification of all putative collective class members is necessary in order to provide them with adequate notice of this action, as contemplated by law. Accordingly, in addition to entering an order granting conditional certification and approving the proposed notice, Plaintiffs ask that the Court also order Bayada to produce the following within ten days of the Court's Order:

> A list, in electronic and importable format, of all persons who worked as home health Clinicians for Defendant at any location in the United States, were classified as exempt employees and were not paid overtime wages for hours worked beyond forty (40) per workweek during a period from three years prior to the entry of the conditional certification order to the present, including their first and last names, last-known addresses, e-mail addresses, telephone numbers, dates of employment, social security numbers and dates of birth.

**E.** **Plaintiffs' Proposed Notice Is Fair, Adequate and Consistent With Court-Approved Notices in Other Similar Actions**

Collective actions depend on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Supervised notice also prevents "misleading communication." *Id.* at 172.

Plaintiffs' proposed form of Notice meets the requirements of "timeliness, accuracy and information." *Id.* Plaintiffs' proposed Notice will inform similarly-situated Clinicians about this

action and give them the opportunity to join. It also accurately describes Plaintiffs' legal claims, their rights, and their options. Finally, the Notice provides clear instructions on how to "opt-in" to the lawsuit and sets forth the prohibition against discrimination or retaliation for participation in this FLSA action. *See* Ex. A.

Plaintiffs propose that the Notice and Opt-in Consent Form be sent *via* First Class U.S. Mail and e-mail to all current and former Clinicians Defendant employed within the past three years. *See Garcia*, 2016 WL 1169560 at *4; *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573-74 (D.N.J. 2014) (approving distribution of notice by e-mail). In addition, to best facilitate dissemination of the Notice to Defendant's employees, Plaintiffs request an order requiring Defendant to post a copy of the Notice at a location in its local offices where potential opt-in Plaintiffs are likely to see it and learn about their rights related to this lawsuit. *See* Ex. A; *see also* Ex. B, *Hauser* Minute Order and Court Tr. (Jan. 6, 2016) (ordering a copy of notice to be posted at a location in defendants' office where it was likely to be seen by potential opt-in plaintiffs); *Harhash v. Infinity West Shoes, Inc.*, No. 10-CV-8285, 2011 WL 4001072, at *5 (S.D.N.Y. Aug. 25, 2011) (holding that Courts routinely order that notice be posted in common areas or employee bulletin board, even when notice is also provided via first-class mail).

Plaintiffs request that potential opt-in Plaintiffs interested in participating in this lawsuit be given 75 days from the Notice mailing to opt-in to this case. Plaintiffs' request is consistent with established FLSA practice in this Circuit. *See, e.g.*, *Pearsall-Dineen*, 27 F. Supp. 3d at 573-74 (granting a 60-day notice period). Further, Plaintiffs propose to send a reminder notice 20 days before the end of the opt-in period to any and all potential opt-in plaintiffs who have not yet returned their Consent Form. *Id.* (authorizing use of a reminder notice). Plaintiffs' proposed notice is fair and accurate and should be approved for immediate distribution.

## IV. <u>CONCLUSION</u>

Conditional certification and court-approved notice are routinely granted in cases like this, where individuals allege similar treatment and experiences in their employment. Plaintiffs have shown they are "similarly-situated," meaning that their request to disseminate a Court-approved Notice to the putative class is warranted. Plaintiffs, therefore, respectfully ask the Court to grant their Motion as follows:

(1) Order conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216 (b), on behalf of all Clinicians who were classified as exempt employees and were not paid overtime wages for hours worked beyond forty (40) per workweek during a period from three years prior to the entry of the conditional certification order until the date of final judgment in this matter (the "FLSA Class");

(2) Order Defendant to produce a computer-readable data file containing the names, addresses, e-mail addresses, telephone numbers, dates of employment, social security numbers and dates of birth for the FLSA Class members;

(3) Order court-facilitated notice of this collective action to the FLSA Class in the form attached as Exhibit A;

(4) Authorize Plaintiffs to send the Notice, at their expense, by First Class U.S. Mail and e-mail to all members of the FLSA Class to inform them of their right to opt-in to this lawsuit and a reminder notice 20 days before the end of the opt-in period; and

(5) Order the posting of the notice at a location in each of Defendant's local offices where members of the FLSA Class are likely to view it.

DATED: May 3, 2017                        Respectfully Submitted,

<u>/s/ James B. Zouras</u>
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601

(312) 233-1550
(312) 233-1560 *f*
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
hjenkins@stephanzouras.com

David J. Cohen
**STEPHAN ZOURAS, LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2017, a true and correct copy of the attached was electronically filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the listed attorneys and parties of record.

*/s/ James B. Zouras*