## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE HIGGINS, MEGHAN TANEYHILL, SHEILA LEVESQUE, MARGARET MAGEE, SHERRI KRAMER, SHELLY NEAL, and YVETTE MARSHALL, for themselves and all others similarly situated, | ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **BAYADA HOME HEALTH CARE, INC.** | ) ) |
| **Defendant.** | ) |

**Case No. 3:16-cv-02382-MEM**

**JURY TRIAL DEMANDED**

## AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

Stephanie Higgins ("Higgins" or "Plaintiff"), Meghan Taneyhill ("Taneyhill" or "Plaintiff"), Sheila Levesque ("Levesque" or "Plaintiff"), Margaret Magee ("Magee" or "Plaintiff"), Sherri Kramer ("Kramer" or "Plaintiff"), Shelly Neal ("Neal" or "Plaintiff"), and Yvette Marshall ("Marshall" or "Plaintiff") (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby make the following allegations against Bayada Home Health Care, Inc. ("Defendant") concerning their acts and status upon their actual knowledge and concerning all other matters upon information, belief, and the investigation of their counsel:

## NATURE OF THE ACTION

1.       Plaintiffs bring this action to redress Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* (the "PMWA"), the New Jersey Wage and Hour Law, N.J.S.A. 34:12-56(a), *et seq.* and N.J.A.C. 12:56-5.1, *et seq.* (the "NJWHL"), the Massachusetts Minimum Fair Wage Law, Mass. Gen. L. c. 151 §§ 1, *et seq.* (the "MMFWL"), the Maryland

Wage and Hour Law, Md. Code Ann., Labor & Employment §§ 3-401, *et seq.* (the "MWHL"), the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq.* and the Colorado Minimum Wage Order no. 34, 7 C.C.R. 1103-1, *et seq.* (the "CMWA"), the Arizona Wage Statute, Ariz. Rev. Stat. §§ 23-350, *et seq.* (the "AWS"), and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.* (the "NCWHA"), by knowingly classifying its home health Clinicians as overtime exempt and knowingly failing to pay them any overtime premium wages for the overtime work they performed despite knowing they were paid pursuant to a hybrid productivity point-based wage scheme that is plainly inconsistent with their classification as overtime exempt.

2.       Plaintiff Higgins brings her FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as home health Clinicians for Defendant at any point during the maximum limitations period (the "FLSA Class").

3.       Plaintiffs Higgins, Taneyhill, Levesque, Magee, Kramer, Neal, and Marshall each bring their respective Pennsylvania, New Jersey, Massachusetts, Maryland, Colorado, Arizona and North Carolina state law claims pursuant to the class action provision of Fed. R. Civ. P. 23 and seek to recover unpaid wages and related penalties and damages for themselves and other similarly situated individuals who worked as home health Clinicians for Defendant at any point in each respective state during each respective state law's applicable statute of limitations period (each, a "State Class").

## JURISDICTION AND VENUE

4.       This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

5.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff Higgins resides in this District, Plaintiff Higgins worked for Defendant in this District, Plaintiff Higgins suffered the losses at issue in this District, Defendant has significant business contacts in this District, Defendant is alleged to have engaged in the wrongful conduct at issue in this District, and actions and omissions giving rise to each Plaintiff's claims occurred in this District.

## THE PARTIES

8.     Plaintiff Stephanie Higgins is a resident of the Commonwealth of Pennsylvania who resides in Luzerne County, PA. From September 4, 2012 to September 27, 2016, Plaintiff Higgins worked as a Registered Nurse for Defendant, performing home health care services in this District. Defendant paid Plaintiff on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Higgins is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

9.     Plaintiff Meghan Taneyhill is a resident of the State of New Jersey who resides in Belford, NJ. From April 2014 to July 2017, Plaintiff Taneyhill worked as a Registered Nurse for Defendant, performing home health care services in Burlington County, New Jersey. Defendant paid Plaintiff Taneyhill on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours

in any workweek. As a result, Plaintiff Taneyhill is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

10.     Plaintiff Sheila Levesque is a resident of the Commonwealth of Massachusetts who resides in Mashpee, MA. From September 2015 to September 2016, Plaintiff Levesque worked as a Registered Nurse for Defendant, performing home health care services in Massachusetts. Defendant paid Plaintiff Levesque on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Levesque is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

11.     Plaintiff Margaret Magee is a resident of the State of Maryland who resides in Abingdon, MD. From June 2013 to September 2016, Plaintiff Magee worked as a Registered Nurse for Defendant, performing home health care services in Maryland. Defendant paid Plaintiff Magee on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Magee is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

12.     Plaintiff Sherri Kramer is a resident of the State of Colorado who resides in Dacono, CO. From March 2005 to the present, Plaintiff Kramer has worked as a Licensed Practical Nurse for Defendant, performing home health care services in Colorado. Defendant paid Plaintiff Kramer on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Kramer is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

13.     Plaintiff Shelly Neal is a resident of the State of Arizona who resides in Tucson, AZ. From July 2017 to May 2018, Plaintiff Neal worked as a Registered Nurse for Defendant, performing home health care services in Arizona. Defendant paid Plaintiff Neal on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Neal is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

14.     Plaintiff Yvette Marshall is a resident of the State of North Carolina who resides in Concord, NC. From Jun 2017 to November 2017, Plaintiff Marshall worked as a Registered Nurse for Defendant, performing home health care services in North Carolina. Defendant paid Plaintiff Marshall on a combined productivity point / hourly basis that did not include the payment of any overtime premium wages for any of the work she performed beyond forty hours in any workweek. As a result, Plaintiff Marshall is personally familiar with, and was personally affected by, the policies and practices described in this Amended Complaint.

15.     Plaintiff Higgins has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). *See* Consent Form (Exhibit A).

16.     Bayada Home Health Care, Inc. ("Defendant") is a limited liability corporation with its headquarters located at 290 Chester Avenue in Moorestown, N.J. Defendant's core business involves the provision of home health care services in at least 22 states, including Pennsylvania. As discussed more fully below, Defendant is directly responsible for the operation of its home health care business, and for the policies, practices, and conduct at issue in this case.

## BACKGROUND FACTS

17.     This action arises out of Defendant's systematic, company-wide wrongful classification of Plaintiffs and other similarly-situated home health Clinicians as exempt from the overtime compensation requirements of the FLSA, the PMWA, the NJWHL, the MMFWL, the MWHL, the CMWA, the AWS, and the NCWHA. The affected employees worked for Defendant as Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, Medical Social Workers and in other similarly-designated skilled care positions (collectively "Clinicians"), whose primary duties involved providing health care services to patients in their homes.

18.     For an employer to properly designate an employee as exempt from statutory overtime compensation requirements, it must affirmatively establish that the employee performs job duties that meet one of the statutorily-defined exemptions and that the employee is paid on either a salary-basis or fee-basis.

19.     Plaintiffs' claims are based on Defendant's uniform determination to pay Plaintiffs and all of its Clinicians pursuant to a hybrid productivity point-based compensation scheme that does not meet either the salary-basis requirement or the fee-basis requirement, meaning that Defendant had no valid basis to classify Plaintiffs, or any other Clinicians, as overtime exempt and, therefore, wrongly deprived these employee of legally-required overtime wages.

20.     Defendant paid Plaintiffs and its other Clinicians on a productivity point system for the time they spent providing care and treatment in patients' homes. This system assigns point values to various tasks and "visit types" depending on the length of time they take or are expected to take. Under this system, Defendant determines Plaintiffs' and its other Clinicians' pay by multiplying their number of points earned each week by a "base visit rate." The system is based

on a matrix that, for example, for RNs attributes one point (or the base visit rate) for a routine home visit, one point for an evaluation visit, 1½ points for a recertification visit or a resumption of care visit, and two points for a "start of care" visit. These visit rates correlate with the average duration for each visit type, and the rates are set based on time estimates for each visit type.

21.     Defendant also assigns point values and/or pays Plaintiffs and other Clinicians on a straight hourly basis for the time they spent performing non-visit related work, including but not limited to time spent attending staff meetings, case conferences, in-service training, and occasional office work. The point values attributed to these tasks are based on the time they actually take, and if, for instance, a staff meeting runs longer than expected, Defendant will increase the point value assigned to that meeting.

22.     Defendant's productivity point-based pay plan serves as a proxy for hourly compensation because it is based on the number of hours assigned to a particular work task rather than the accomplishment of a given single task as required by the FLSA's fee basis regulation.

23.     Defendant's productivity point system, which is based on time estimates for visits and not the actual time spent working, does not accurately account for the time  Plaintiffs and other Clinicians spend on a wide array of other work-related tasks they were required to perform on a regular basis, including: preparing for patient visits, communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters, coordinating patient care with other providers, travelling between patients' homes, documenting information from patient visits ("charting"), or ordering, organizing and retrieving equipment and supplies used during their home visits.

24.     Defendant's uniform pay plan also does not provide Plaintiffs and its other Clinicians with a guaranteed salary. For example, if low patient availability prevents Plaintiffs and

7

other Clinicians from meeting their weekly productivity point quota, Defendant penalizes Plaintiffs and other Clinicians by requiring them to supplement those points with earned paid time off ("PTO") hours. If Plaintiffs or other Clinicians exhaust their available PTO hours, Defendant does not pay Plaintiffs or its other Clinicians their full salary or otherwise compensate them for the gap in productivity, instead paying only for the actual points they earned. Therefore, Defendant's pay plan does not amount to a guaranteed salary because Plaintiffs and other Clinicians do not receive their full salary if they do not meet their productivity quota and exhaust their available PTO hours.

25.     Defendant routinely suffered and permitted Plaintiffs and its other Clinicians to spend more than forty hours per workweek on the various work-related tasks described above.

26.     Defendant did not maintain accurate contemporaneous records of all the hours Plaintiffs and its other Clinicians worked, and did not require any Clinician, including Plaintiffs, to maintain such records.

27.     Defendant knew or should have known that Plaintiffs and its other Clinicians were working more than 40 hours per week, because it assigned the work they performed; it tracked their performance of this work; and it required all Clinicians to complete extensive paperwork detailing their work and when it was completed.

28.     Defendant knew or should have known that Plaintiffs and its other Clinicians should have been classified as non-exempt employees because it was responsible for implementing and managing the hybrid productivity point-based compensation system that does not meet any test for exemption under the FLSA, the PMWA, the NJWHL, the MMFWL, the MWHL, the CMWA, the AWS, and the NCWHA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

29.     Plaintiffs bring their FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as home health Clinicians for Defendant at any point during the maximum limitations period (the "FLSA Class").

30.     Plaintiffs belong to the FLSA Class they seek to represent, because:

    a.      They each worked as a home health Clinician for Defendant during the relevant period and each had similar job duties to the other FLSA Class members;

    b.      They each received the same training from Defendant and were required to comply with the same wage and hour policies;

    c.      Defendant classified each Plaintiff as exempt from the FLSA's overtime compensation requirements;

    d.      Plaintiffs' wages were calculated and paid based on Defendant's hybrid productivity point-based pay scheme;

    e.      Defendant routinely suffered and permitted Plaintiffs to work more than forty hours per workweek;

    f.      Defendant did not maintain accurate contemporaneous records of all the hours each Plaintiff worked, and did not require any Clinician, including each Plaintiff to maintain such records;

    g.      Defendant knew each Plaintiff was working more than 40 hours per week, because it assigned the work they performed, tracked their performance of this work and required them to complete extensive paperwork detailing their work and when it was completed; and

      h.     Defendant did not pay Plaintiffs for any overtime premium wages for any of the work they performed beyond forty hours in any work week.

31.    Although Plaintiffs and the FLSA Class members may have worked in different states or under different managers, this action may be properly maintained as a collective action because, among other things:

      a.     They worked under the same material terms and conditions of employment;

      b.     They were all classified as exempt from statutory overtime wage requirements;

      c.     They performed the same job duties and had the same job-related responsibilities;

      d.     They received common training about their employment and the wage and hour policies and practices at issue here;

      e.     They were governed by the same timekeeping policies, practices and systems;

      f.     They were governed by the same compensation policies, practices and systems;

      g.     They were governed by the same policies, practices and systems concerning work hours and the performance of their work; and

      h.     They were governed by the same policies, practices and systems concerning overtime hours and wages.

32.    Plaintiffs and the FLSA Class members do not meet any test for exemption under the FLSA.

33.     Plaintiffs estimate that the FLSA Class, including both current and former employees over the relevant period, will include thousands of members. The precise number of FLSA Class members will be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## STATE SPECIFIC CLASS ALLEGATIONS

34.     Plaintiffs also seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of themselves and all other similarly situated Clinicians who worked for Defendant in Pennsylvania, New Jersey, Massachusetts, Maryland, Colorado, Arizona, and North Carolina, at any time within each respective state law's applicable statute of limitations period.[1]

35.     Plaintiffs and other similarly situated Clinicians all worked under common employment policies, were subject to the same compensation scheme, and were subject to the same practices challenged in this action as described above.

36.     Plaintiff Higgins worked for Defendant as a Registered Nurse in Pennsylvania during the applicable statute of limitations period.

37.     Plaintiff Taneyhill worked for Defendant as a Registered Nurse in New Jersey during the applicable statute of limitations period.

---

[1]     The Statute of Limitations period for each applicable state law is as follows: (1) in Pennsylvania, the statute of limitations period is three years. 43 P.S. § 260.9a(g); (2) in New Jersey, the statute of limitations period is two years. N.J.S.A. 34:11-56(a)(25.1); (3) in Massachusetts, the statute of limitations period is three years. Mass. Gen. L. c. 151 § 20A; (4) in Maryland, the statute of limitations period is three years. Md. Code Ann. § 5-101; (5) in Colorado, the statute of limitations period is two years, unless the violation is willful in which case the statute of limitations period is three years. 7 C.C.R. 1103-1 § 15; (6) in Arizona, the statute of limitations period is one year. A.R.S. § 12-541; and (7) in North Carolina, the statute of limitations period is two years. N.C. Gen. Stat. § 95-25.22(f).

38.     Plaintiff Levesque worked for Defendant as a Registered Nurse in Massachusetts during the applicable statute of limitations period.

39.     Plaintiff Magee worked for Defendant as a Registered Nurse in Maryland during the applicable statute of limitations period.

40.     Plaintiff Kramer worked for Defendant as a Licensed Practical Nurse in Colorado during the applicable statute of limitations period.

41.     Plaintiff Neal worked for Defendant as a Registered Nurse in Arizona during the applicable statute of limitations period.

42.     Plaintiff Marshall worked for Defendant as a Registered Nurse in North Carolina during the applicable statute of limitations period.

43.     Plaintiffs belong to each respective Class they seek to represent because they:

    a.      Worked for Defendant as Clinicians under the same material terms and conditions of employment as each applicable State Class's members;

    b.      Were uniformly classified as exempt from federal and each respective State's statutory overtime wage requirements;

    c.      Performed the same job duties and had the same job-related responsibilities as each applicable State Class's members;

    d.      Received the same training about their employment and wage and hour policies and practices at issue here as each applicable State Class's members;

    e.      Were governed by the same timekeeping policies, practices and systems as each applicable State Class's members;

    f.      Were governed by the same compensation policies, practices and systems as each applicable State Class's members;

g.      Were governed by the same policies, practices and systems concerning work hours and the performance of their work as each applicable State Class's members; and

h.      Were governed by the same policies, practices and systems concerning overtime hours and wages as each applicable State Class's members.

## **Class Definition**

44.    Plaintiffs seek certification of state specific classes consisting of the following individuals in Pennsylvania, New Jersey, Massachusetts, Maryland, Colorado, Arizona, and North Carolina respectively (each, a "State Class"):

> All individuals who currently work, or have worked, for Defendant as a home health Clinician in [State], during [State]'s applicable statute of limitations period.[2]

## **Numerosity**

45.    More than 40 Clinicians were employed by Defendant in each applicable State who were subject to the same practices challenged in this action as alleged above and not paid overtime compensation for all time worked in excess of 40 in given workweeks. Accordingly, Plaintiffs satisfy the numerosity requirements as each State Class is so numerous that joinder of all members is impracticable.

46.    Members of each proposed State Class can be identified and located using Defendant's payroll and personnel records. State Class members may be informed of the pendency of this action by direct mail, electronic mail, text message, and/or published and broadcast notice.

---

[2]      Plaintiffs reserve the right to propose a different class definition or include sub-classes, if appropriate, after the completion of discovery.

**Common Questions of Fact or Law**

47.     There are questions of fact and law common to each State Class member which predominate over questions affecting only individual members, if any. Plaintiffs, the members of each State Class, and Defendant have a commonality of interest in the subject matter and the remedy sought.

48.     If individual actions were required to be brought by each member of each State Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the State Classes, and to the Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which each State Class is entitled.

**Typicality**

49.     Plaintiffs' claims are typical of the claims of each State Class's members.  As a result of Defendant's unlawful conduct, Plaintiffs suffered similar injuries as those suffered by other members of each respective State Class they seek to represent.

**Adequacy**

50.     Plaintiffs are adequate representatives of each respective State Class they seek to represent because they are each members of a respective State Class, and their interests do not conflict with the interests of the other members of each State Class. The interests of each State Class member will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

**Superiority**

51.      A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

52.      Moreover, as the damages suffered by each State Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each State Class member to bring individual claims.

53.      The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of each State Class's members to protect their interests.

**COUNT I**
**FAIR LABOR STANDARDS ACT SECTION 207**
**DEFENDANT'S FAILURE TO PAY EARNED OVERTIME**

54.      Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

55.      Defendant is an "Employer" as defined by 29 U.S.C. § 203(d).

56.      The wages Defendant paid to Plaintiff Higgins and the FLSA Class members are "Wages" as defined by 29 U.S.C. § 203(m).

57.      Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

58.    Plaintiff Higgins and the FLSA Class members are "Employees" as defined by 29 U.S.C. § 203(e)(1).

59.    Plaintiff Higgins and the FLSA Class members are similarly-situated individuals within the meaning of 29 U.S.C. § 216(b).

60.    29 U.S.C. § 207(a)(1) provides that, with certain exceptions not applicable here, non-exempt employees must be paid an overtime premium rate, equal to 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

61.    29 U.S.C. § 211(c) expressly requires employers to maintain accurate time records of the work their employees perform.

62.    29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employer's failure to comply with its requirements.

63.    Throughout the relevant period, Defendant was obligated to comply with the FLSA's requirements, Plaintiff Higgins and the FLSA Class members were covered employees entitled to the FLSA's protections, and Plaintiff Higgins and the FLSA Class members were not exempt from receiving wages required by the FLSA for any reason.

64.    Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly classifying Plaintiff Higgins and the FLSA Class members as exempt from the FLSA's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement.

65.    Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly suffering or permitting Plaintiff Higgins and the FLSA

Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

66.     Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to pay Plaintiff Higgins and the FLSA Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

67.     Defendant violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Higgins and the FLSA Class members worked.

68.     Plaintiff Higgins and the FLSA Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime wages owed for work they performed from which Defendant derived a direct and substantial benefit.

69.     Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Higgins and the FLSA Class members all wages mandated by the FLSA.

**COUNT II**
**PENNSYLVANIA MINIMUM WAGE ACT**
**FAILURE TO PAY MINIMUM AND OVERTIME WAGES**
**UNDER PENNSYLANIA LAW**

70.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

71.     Plaintiff Higgins and other similarly situated home health Clinicians that currently work or worked for Defendant in Pennsylvania during the applicable statute of limitations period (the "Pennsylvania Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72.     The unpaid wages at issue in this litigation are "Wages" as defined by PMWA § 3(d).

73.     Defendant is an "Employer" as defined in PMWA § 3(g).

74.     Plaintiff Higgins and the Pennsylvania Class members are "Employees" as defined by PMWA § 3(h).

75.     PMWA § 4(a.1) requires an employer to pay its employees at least the federal minimum wage rate for all hours worked.

76.     PMWA § 4(c) and the applicable enabling Regulations found at 34 Pa. Code § 231.42 state that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

77.     PMWA § 8 requires employers to keep a true and accurate record of the hours worked by each employee.

78.     PMWA § 13 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the PMWA's requirements.

79.     PMWA § 13 expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

80.     Throughout the relevant period, Defendant was obligated to comply with the PMWA's requirements, Plaintiff Higgins and the Pennsylvania Class members were covered employees entitled to the PMWA's protections, and Plaintiff Higgins and the Pennsylvania Class members were not exempt from receiving wages required by the PMWA for any reason.

81.     Defendant violated the PMWA and acted with reckless disregard of clearly applicable PMWA provisions by knowingly classifying Plaintiff Higgins and the Pennsylvania Class members as exempt from the PMWA's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement. *See, e.g.*, 34 Pa. Code § 231.84 (Exemptions under the PMWA require Defendant to prove that the employee at issue is "compensated for his services on a salary or fee basis …").

82.     Defendant violated the PMWA and acted with reckless disregard of clearly applicable PMWA provisions by knowingly suffering or permitting Plaintiff Higgins and the Pennsylvania Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

83.     Defendant violated the PMWA and acted with reckless disregard of clearly applicable PMWA provisions by knowingly failing to pay Plaintiff Higgins and the Pennsylvania Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with

other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

84.     Defendant violated the PMWA and acted with reckless disregard of clearly applicable PMWA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Higgins and the Pennsylvania Class members worked.

85.     Plaintiff Higgins and the Pennsylvania Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

86.     Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Higgins and the Pennsylvania Class members all wages mandated by the PMWA.

87.     As a result of Defendant's violations of the PMWA, Plaintiff Higgins and other members of the Pennsylvania Class have suffered harm and are entitled to recoup their unpaid wages and other losses in an amount to be determined at trial, along with liquidated damages, interest and reasonable attorneys' fees and costs.

### COUNT III
### NEW JERSEY WAGE AND HOUR LAW
### DEFENDANT'S FAILURE TO PAY MINIMUM AND OVERTIME WAGES
### UNDER NEW JERSEY LAW

88.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

89.     Plaintiff Taneyhill and other similarly situated home health Clinicians that currently work or worked for Defendant in New Jersey during the applicable statute of limitations period

(the "New Jersey Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

90.     The unpaid wages at issue in this litigation are "Wages" as defined by N.J.S.A. § 34:11-56(a)(1)(d).

91.     Defendant is an "Employer" as defined in N.J.S.A. § 34:11-56(a)(1)(g).

92.     Plaintiff Taneyhill and the New Jersey Class members are "Employees" as defined by N.J.S.A. § 34:11-56(a)(1)(h).

93.     Throughout the relevant period, Defendant has been subject to the NJWHL.

94.     N.J.S.A. § 34:11-56(a)(4) and N.J.A.C. 12:56-3.1 require an employer to pay its employees the State minimum wage rate[3] or the federal minimum wage rate, whichever is greater, for all hours worked.

95.     The NJWHL also provides that "Every employer shall pay to each of his employees wages at a rate of not less than 1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week." N.J.S.A. § 34:11-56(a)(4).

96.     N.J.S.A. § 34:11-56(a)(20) requires employers to keep a true and accurate record of the hours worked by each employee.

97.     N.J.S.A. § 34:11-56(a)(25) expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the NJWHL's requirements.

98.     N.J.S.A. § 34:11-56(a)(25) expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

---

[3]     The New Jersey State minimum wage rate is: (1) for the 24-month period beginning January 1, 2015, $8.38 per hour; (2) for the 12-month period beginning January 1, 2017, $8.44 per hour; and (3) beginning January 1, 2018, $8.60 per hour. *See also* N.J.A.C. 12:56-3.1.

99.     Throughout the relevant period, Defendant was obligated to comply with the NJWHL's requirements, Plaintiff Taneyhill and the New Jersey Class members were covered employees entitled to the NJWHL's protections, and Plaintiff Taneyhill and the New Jersey Class members were not exempt from receiving wages required by the NJWHL for any reason.

100.    Defendant violated the NJWHL and acted with reckless disregard of clearly applicable NJWHL provisions by knowingly classifying Plaintiff Taneyhill and the New Jersey Class members as exempt from the NJWHL overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement. *See Garcia v. Freedom Mortg. Corp.*, 790 F. Supp. 2d 283, 288 n.7 (D.N.J. 2011) (noting that the NJWHL is patterned after the FLSA, and New Jersey courts look to the FLSA regulations for guidance in regards to exemptions).

101.    Defendant violated the NJWHL and acted with reckless disregard of clearly applicable NJWHL provisions by knowingly suffering or permitting Plaintiff Taneyhill and the New Jersey Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

102.    Defendant violated the NJWHL and acted with reckless disregard of clearly applicable NJWHL provisions by knowingly failing to pay Plaintiff Taneyhill and the New Jersey Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

103.    Defendant violated the NJWHL and acted with reckless disregard of clearly applicable NJWHL provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Taneyhill and the New Jersey Class members worked.

104.    Plaintiff Taneyhill and the New Jersey Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

105.    Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Taneyhill and the New Jersey Class members all wages mandated by the NJWHL.

106.    As a result of Defendant's violations of the NJWHL, Plaintiff Taneyhill and other members of the New Jersey Class have suffered harm and are entitled to recoup their unpaid wages and other losses in an amount to be determined at trial, along with liquidated damages, interest and reasonable attorneys' fees and costs.

**COUNT IV**
**MASSACHUSETTS MINIMUM FAIR WAGE LAW**
**DEFENDANT'S FAILURE TO PAY MINIMUM AND OVERTIME WAGES**
**UNDER MASSACHUSETTS LAW**

107.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

108.    Plaintiff Levesque and other similarly situated home health Clinicians that currently work or worked for Defendant in Massachusetts during the applicable statute of limitations period (the "Massachusetts Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

109.    MMFWL § 1 requires an employer to pay its employees at a State minimum wage,[4] and in no case a wage less than $0.50 higher than the effective federal minimum wage, for all hours worked.

110.    MMFWL § 1A states that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

111.    MMFWL § 15 requires employers to keep a true and accurate record of the hours worked by each employee.

112.    MMFWL § 1B expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the MMFWL's requirements.

113.    MMFWL § 1B expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

114.    Throughout the relevant period, Defendant was obligated to comply with the MMFWL's requirements, Plaintiff Levesque and the Massachusetts Class members were covered employees entitled to the MMFWL's protections, and Plaintiff Levesque and the Massachusetts Class members were not exempt from receiving wages required by the MMFWL for any reason.

115.    Defendant violated the MMFWL and acted with reckless disregard of clearly applicable MMFWL provisions by knowingly classifying Plaintiff Levesque and the Massachusetts Class members as exempt from the MMFWL's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement. *See Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d

---

[4]    The Massachusetts Commonwealth minimum wage rate is: (1) for the 12-month period beginning January 1, 2015, $9.00 per hour; (2) for the 12-month period beginning January 1, 2016, $10.00 per hour; and (3) beginning January 1, 2018, $11.00 per hour.

289, 293–94 (Mass. 2000) (noting that the MMFWL's exemptions should be interpreted in line with the FLSA's exemptions).

116. Defendant violated the MMFWL and acted with reckless disregard of clearly applicable MMWFL provisions by knowingly suffering or permitting Plaintiff Levesque and the Massachusetts Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

117. Defendant violated the MMFWL and acted with reckless disregard of clearly applicable MMFWL provisions by knowingly failing to pay Plaintiff Levesque and the Massachusetts Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

118. Defendant violated the MMFWL and acted with reckless disregard of clearly applicable MMFWL provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Levesque and the Massachusetts Class members worked.

119. Plaintiff Levesque and the Massachusetts Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

120.     Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Levesque and the Massachusetts Class members all wages mandated by the MMFWL.

121.     As a result of Defendant's violations of the MMFWL, Plaintiff Levesque and other members of the Massachusetts Class have suffered harm and are entitled to recoup their unpaid wages and other losses in an amount to be determined at trial, along with treble damages as liquidated damages, interest and reasonable attorneys' fees and costs.

**COUNT V**
**MARYLAND WAGE AND HOUR LAW**
**DEFENDANT'S FAILURE TO PAY MINIMUM AND OVERTIME WAGES**
**UNDER MARYLAND LAW**

122.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

123.     Plaintiff Magee and other similarly situated home health Clinicians that currently work or worked for Defendant in Maryland during the applicable statute of limitations period (the "Maryland Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

124.     The unpaid wages at issue in this litigation are "Wages" as defined by MWHL § 3-401(d).

125.     Defendant is an "Employer" as defined in MWHL § 3-401(b).

126.     MWHL § 3-413 requires an employer to pay its employees the State minimum wage rate[5] or the federal minimum wage rate, whichever is greater, for all hours worked.

_____

[5]     The State minimum wage rate is: (1) for the 6-month period beginning January 1, 2015, $8.00 per hour; (2) for the 12-month period beginning July 1, 2015, $8.25 per hour; (3) for the 12-month period beginning July 1, 2016, $8.75 per hour; (4) for the 12-month period beginning July 1, 2017, $9.25 per hour; and (5) beginning July 1, 2018, $10.10 per hour. MWHL § 3-413. In Montgomery County, Maryland, the minimum wage rate is: (1) for the 12-month period beginning July 1, 2017, $11.50 per hour; and (2)

26

127.    MWHL § 3-415 states that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

128.    MWHL § 3-420 states that employees shall be paid for all hours worked in excess of 60 hours per week at a rate not less than 1½ times their regular rate of pay even if they are otherwise exempt from the overtime provisions of the FLSA.

129.    MWHL § 3-424 requires employers to keep a true and accurate record of the hours worked by each employee.

130.    MWHL § 3-427(a) expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the MWHL's requirements.

131.    MWHL § 3-427(c) expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

132.    Throughout the relevant period, Defendant was obligated to comply with the MWHL's requirements, Plaintiff Magee and the Maryland Class members were covered employees entitled to the MWHL's protections, and Plaintiff Magee and the Maryland Class members were not exempt from receiving wages required by the MWHL for any reason.

133.    Defendant violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly classifying Plaintiff Magee and the Maryland Class members as exempt from the MWHL's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement. *See Williams v. Genex Svcs., LLC*, 809 F.3d 103, 105 n.2 (noting that the

beginning July 1, 2018, $12.00 per hour (if 50 or less employees) and $12.25 per hour (if 51 or more employees). Montgomery County Code, ch. 27, art. XI. In Prince George's County, Maryland, the minimum wage rate is: (1) for the 12-month period beginning October 1, 2016, $10.75 per hour; and (2) beginning October 1, 2017, $11.50 per hour. Prince George's County Code, Labor Code, subtit. 13A.

requirements for the professional exemption under the MWHL "has the meaning stated in [the FLSA].") (citing Md. Code Regs. 09.12.41.17)

134.  Defendant violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly suffering or permitting Plaintiff Magee and the Maryland Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

135.  Defendant violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly failing to pay Plaintiff Magee and the Maryland Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

136.  Defendant violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Magee and the Maryland Class members worked.

137.  Plaintiff Magee and the Maryland Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

138.  Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Magee and the Maryland Class members all wages mandated by the MWHL.

139.     As a result of Defendant's violations of the MWHL, Plaintiff Magee and other members of the Maryland Class have suffered harm and are entitled to recoup their unpaid wages and other losses in an amount to be determined at trial, along with liquidated damages, interest and reasonable attorneys' fees and costs.

**COUNT VI**
**COLORADO MINIMUM WAGE ACT AND MINIMUM WAGE ORDER 34**
**DEFENDANT'S FAILURE TO PAY MINIMUM AND OVERTIME WAGES**
**UNDER COLORADO LAW**

140.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

141.     Plaintiff Kramer and other similarly situated home health Clinicians that currently work or worked for Defendant in Colorado during the applicable statute of limitations period (the "Colorado Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

142.     The unpaid wages at issue in this litigation are "Wages" as defined by 7 C.C.R. 1103-1 § 2.

143.     Defendant is an "Employer" as defined in 7 C.C.R. 1103-1 § 2.

144.     Plaintiff Kramer and the Colorado Class members are "Employees" as defined by 7 C.C.R. 1103-1 § 2.

145.     CO Rev. Stat. § 8-6-104 and 8-6-106, as well as the applicable enabling Regulations found at 7 C.C.R. 1103-1 § 3 require employers to pay their employees an adequate minimum wage[6] for all hours worked.

---

[6]     The State minimum wage is: (1) for the 12-month period beginning January 1, 2015, $8.23 per hour; (2) for the 12-month period beginning January 1, 2016, $8.31 per hour; (3) for the 12-month period beginning January 1, 2017, $9.30 per hour; and (4) for the 12-month period beginning January 1, 2018, $10.20 per hour.

146.     CO Rev. Stat. § 8-6-104 and the applicable enabling Regulations found at 7 C.C.R. 1103-1 § 4 state that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

147.     7 C.C.R. 1103-1 § 12 requires employers to keep a true and accurate record of the hours worked by each employee.

148.     CO Rev. Stat. § 8-6-117 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the CMWA's requirements.

149.     CO Rev. Stat. § 8-6-117 expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

150.     Throughout the relevant period, Defendant was obligated to comply with the CMWA's requirements, Plaintiff Kramer and the Colorado Class members were covered employees entitled to the CMWA's protections, and Plaintiff Kramer and the Colorado Class members were not exempt from receiving wages required by the CMWA for any reason.

151.     Defendant violated the CMWA and acted with reckless disregard of clearly applicable CMWA provisions by knowingly classifying Plaintiff Kramer and the Colorado Class members as exempt from the CMWA's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet the salary-basis requirements of the CMWA. *See, e.g.*, 7 C.C.R. 1103-1 § 5(c) (to qualify under the Professional Exemption, the employee must be "a *salaried* individual employed in a field of endeavor…") (emphasis added).[7]

---

[7]     7 C.C.R. 1103-1 § 5(c) provides that the salary basis requirements for a professional exemption do not apply to doctors, lawyers, teachers, and employees in highly technical computer occupations earning at least $27.63 per hour. Because Plaintiff Kramer and the Colorado Class are not included in this exception, Defendant must prove that Plaintiff Kramer and the Colorado Class are paid on a salary basis.

152.    Defendant violated the CMWA and acted with reckless disregard of clearly applicable CMWA provisions by knowingly suffering or permitting Plaintiff Kramer and the Colorado Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

153.    Defendant violated the CMWA and acted with reckless disregard of clearly applicable CMWA provisions by knowingly failing to pay Plaintiff Kramer and the Colorado Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

154.    Defendant violated the CMWA and acted with reckless disregard of clearly applicable CMWA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Kramer and the Colorado Class members worked.

155.    Plaintiff Kramer and the Colorado Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

156.    Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Kramer and the Colorado Class members all wages mandated by the CMWA.

157.    As a result of Defendant's violations of the CMWA, Plaintiff Kramer and other members of the Colorado Class have suffered harm and are entitled to recoup their unpaid wages

and other losses in an amount to be determined at trial, along with liquidated damages, interest and reasonable attorneys' fees and costs.

**COUNT VII**
**ARIZONA WAGE STATUTE**
**DEFENDANT'S FAILURE TO PAY OVERTIME WAGES**
**UNDER ARIZONA LAW**

158.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

159.    Plaintiff Neal and other similarly situated home health Clinicians that currently work or worked for Defendant in Arizona during the applicable statute of limitations period (the "Arizona Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

160.    The unpaid wages at issue in this litigation are "Wages" as defined by A.R.S. § 23-350(7).

161.    Defendant is an "Employer" as defined in A.R.S. § 23-350(3).

162.    Plaintiff Neal and the Arizona Class members are "Employees" as defined by A.R.S. § 23-350(2).

163.    A.R.S. §23-351(A) provides, in relevant part, that employers must designate "two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees."

164.    A.R.S. § 23-351(C) provides, in relevant part, that employers must pay employees all wages due to the employee on each regular payday.

165.    A.R.S. § 23-351(C)(3) further provides, "Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

166.    A.R.S. § 23-352 provides, in relevant part:

No employer may withhold or divert any portion of an employee's wages unless one of the following applies:

(1) The employer is required or empowered to do so by state or federal law;

(2) The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to the employer or a court orders otherwise; and

(3) There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee."

167.    A.R.S. § 23-355(A) provides that if an employer, in violation of the AWS, fails to timely pay wages due, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of unpaid wages.

168.    A.R.S. § 23-355 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the AWS's requirements.

169.    Throughout the relevant period, Defendant was obligated to comply with the AWS's requirements, Plaintiff Neal and the Arizona Class members were covered employees entitled to the AWS's protections, and Plaintiff Neal and the Arizona Class members were not exempt from receiving wages required by the AWS for any reason.

170.    Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly classifying Plaintiff Neal and the Arizona Class members as exempt under the FLSA which has resulted in an underpayment of wages and violation of the AWS including the requirement that Defendant properly pay Plaintiff Neal and the Arizona Class members all wages due.

171.    Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly failing to pay Plaintiff Neal and the Arizona Class members all wages due including those for a wide array of work-related tasks they

33

were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

172.    Defendant violated the AWS and acted with reckless disregard of clearly applicable AWS provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Neal and the Arizona Class members worked.

173.    Plaintiff Neal and the Arizona Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendant derived a direct and substantial benefit.

174.    As a result of Defendant's violations of the AWS, Plaintiff Neal and other members of the Arizona Class have suffered harm and are entitled to recoup their unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with reasonable attorneys' fees and costs, pursuant to A.R.S. § 23-355.

### COUNT VIII
### NORTH CAROLINA WAGE AND HOUR ACT
### DEFENDANT'S FAILURE TO PAY MINIMUM AND OVERTIME WAGES
### UNDER NORTH CAROLINA LAW

175.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

176.    Plaintiff Marshall and other similarly situated home health Clinicians that currently work or worked for Defendant in North Carolina during the applicable statute of limitations period

(the "North Carolina Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

177.    The unpaid wages at issue in this litigation are "Wages" as defined by NCWHA § 95-25.2(16).

178.    Defendant is an "Employer" as defined in NCWHA § 95-25.2(5).

179.    Plaintiff Marshall and the North Carolina Class members are "Employees" as defined by NCWHA § 95-25.2(4).

180.    NCWHA § 95-25.3(a) requires an employer to pay its employees wages of at least the federal minimum wage rate for all hours worked.

181.    NCWHA § 95-25.4(a) states that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

182.    NCWHA § 95-25.15(b) requires employers to keep a true and accurate record of the hours worked by each employee.

183.    NCWHA § 95-25.6 makes it unlawful for an employer to require or permit an employee to work without paying compensation for all hours worked.

184.    NCWHA § 95-25.22(b) expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the NCWHA's requirements.

185.    Throughout the relevant period, Defendant was obligated to comply with the NCWHA's requirements, Plaintiff Marshall and the North Carolina Class members were covered employees entitled to the NCWHA's protections, and Plaintiff Marshall and the North Carolina Class members were not exempt from receiving wages required by the NCWHA for any reason.

186.    Defendant failed to pay Plaintiff Marshall and the North Carolina Class members all accrued wages on the employees' regular paydays for all hours worked.

187.    Defendant violated the NCWHA and acted with reckless disregard of clearly applicable NCWHA provisions, including but not limited to NCWHA § 95-25.6 and § 95-25.7, by knowingly classifying Plaintiff Marshall and the North Carolina Class members as exempt from the NCWHA's overtime pay provision despite knowing that its hybrid productivity point-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement. *See Massie v. Bd. Of Trustees, Haywood Cmty. Coll.*, 357 F. Supp. 2d 878, 881 (W.D.N.C. 2005) (noting that the professional exemption under the NCWHA is defined in the same manner as the FLSA) (citing NCWHA § 95-25.14(b)(4)).

188.    Defendant violated the NCWHA and acted with reckless disregard of clearly applicable NCWHA provisions by knowingly suffering or permitting Plaintiff Marshall and the North Carolina Class members to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

189.    Defendant violated the NCWHA and acted with reckless disregard of clearly applicable NCWHA provisions by knowingly failing to pay Plaintiff Marshall and the North Carolina Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

190.    Defendant violated the NCWHA and acted with reckless disregard of clearly applicable NCWHA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff Marshall and the North Carolina Class members worked.

191.    Defendant has no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff Marshall and the North Carolina Class members all wages mandated by the NCWHA.

192.    Plaintiff Marshall and the North Carolina Class members have sustained losses in compensation as a proximate result of Defendant's violations of the NCWHA. Accordingly, Plaintiff Marshall, on behalf of herself and the North Carolina Class members, seeks damages in the amount of their unpaid earned compensation, plus liquidated damages and interest at the legal rate set forth in NCHWA § 95-25.22(a) and (a)(1).

193.    Plaintiff Marshall, on behalf of herself and the North Carolina Class members, seeks recovery of hre attorneys' fees and costs, as provided by the NCWHA § 95-25.22.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, demand judgment against Defendant, and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiffs and all others similarly situated for the nature, extent, and duration of their damages, the costs of this action, and as follows:

A.  approve this matter to proceed as a collective action with respect to Count I;

B.  approve this matter to proceed as a class action with respect to Counts II through VIII;

C.  appoint Stephan Zouras, LLP to serve as Class and Collective Counsel;

D.  award judgment in favor of Plaintiff Higgins and against Defendant for an amount equal to Plaintiff Higgins's and the FLSA Class members' unpaid overtime compensation;

E.  award judgment in favor of Plaintiffs and against Defendant for an amount equal to Plaintiffs' and Class members' unpaid wages pursuant to the applicable wage rates under each State's law;

F.   declare that Defendant's violations of the FLSA and each State's wage and hour laws were willful;

G.   award Plaintiff Higgins and members of the FLSA Class liquidated damages in accordance with the FLSA;

H.   award Plaintiffs and members of each State Class liquidated damages in accordance with each applicable State's statutory provisions;

I.   award prejudgment interest for the FLSA claims (to the extent that liquidated damages are not awarded);

J.   award prejudgment interest for all state-law statutory wage claims (even if liquidated damages are awarded);

K.   certify this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure and certify each State Class set forth above;

L.   grant Plaintiffs leave to assert claims for punitive damages as required under each applicable state law;

M.   award punitive damages to Plaintiffs and each State Class to the extent permitted by the respective State's law;

N.   declare and find that Defendant willfully violated all applicable record keeping statutes;

O.   issue all appropriate injunctive relief to prevent Defendant from violating the applicable and respective state-law statutory obligations, with ongoing oversight and continuing jurisdiction of the Court as needed, including requiring Defendant to pay for an audit of its record-keeping system;

P.   award Plaintiff Higgins reasonable attorneys' fees and all costs of the collective action, to be paid by Defendant, in accordance with the FLSA;

Q.   award Plaintiffs reasonable attorneys' fees and all costs of each State Class action, to be paid by Defendant, in accordance with each applicable State's law;

R.   award pre- and post-judgment interest and court costs as further allowed by law;

S.   award a reasonable service award for each Plaintiff to compensate them for the time and effort spent protecting the interests of other Clinicians, and the risks they have undertaken;

T.  grant Plaintiffs and each State Class leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

U.  provide additional general and equitable relief to which Plaintiffs and each State Class may be entitled; and,

V.  provide further relief as the Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.


Dated: December 2, 2019                    Respectfully submitted,

                                           _/s/ James B. Zouras_____
                                           James B. Zouras (*pro hac vice*)
                                           Ryan F. Stephan (*pro hac vice*)
                                           Teresa M. Becvar (*pro hac vice*)
                                           STEPHAN ZOURAS, LLP
                                           100 N Riverside Plaza, Suite 2150
                                           Chicago, IL 60606
                                           (312) 233-1550
                                           (312) 233-1560 *f*

                                           David J. Cohen
                                           STEPHAN ZOURAS, LLP
                                           604 Spruce Street
                                           Philadelphia, PA 19106
                                           (215) 873-4836

                                           *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on December 2, 2019, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

 _/s/ James B. Zouras_