## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| STEPHANIE HIGGINS, MEGHAN TANEYHILL, SHEILA LEVESQUE, MARGARET MAGEE, SHERRI KRAMER, SHELLY NEAL, and YVETTE MARSHALL, for themselves and all others similarly situated, | Case No. 3:16-cv-02382 |
| Plaintiffs, | Judge Jennifer P. Wilson |
| v. |  |
| BAYADA HOME HEALTH CARE, INC., |  |
| Defendant. |  |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Bayada Home Health Care, Inc. ("Bayada"), by and through its counsel, Buchanan Ingersoll & Rooney PC, hereby moves this Court, under Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 56, to grant summary judgment in its favor and against named Plaintiff Stephanie Higgins ("Higgins") with respect to her individual claims in their entirety under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.* ("PMWA").  Additionally, Bayada seeks judgment as a matter of law under Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 56 that Bayada's compensation structure, as applied to

all Clinicians on a nationwide basis (and more specifically to members of the FLSA Collective), does not violate the FLSA.

For the reasons stated below, and in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, which will be filed in accordance with the timetable established by Local Rule 7.5, Defendant's Motion should be granted.

## **INTRODUCTION**[1]

1. Plaintiffs' putative class and collective action is predicated on the mistaken belief that Bayada, a home healthcare provider, violated—and continues to violate—the FLSA and PMWA by misclassifying its home health "Clinicians" as exempt and failing to pay them overtime for hours worked over 40 in a workweek. The crux of Plaintiffs' dispute stems from the compensation structure that Bayada employs relative to its Clinicians, which Plaintiffs maintain is an impermissible "hybrid pay scheme." *See* Amended Collective and Class Action Complaint [ECF 132] ("Amended Complaint") at ¶ 19.

2. Plaintiffs are simply wrong and confuse the issue. Contrary to Plaintiffs' contentions, during the relevant time period, Bayada paid Higgins and the Clinicians who comprise the collective that is presently certified by this Court

---

[1]    In accordance with Local Rule 56.1, Bayada has filed a separate Statement of Undisputed Material Facts, which is incorporated herein by reference. The Introduction contains a summary of material facts.

(the "FLSA Collective") a guaranteed weekly salary in accordance with its "salary plus model," which does not run afoul of the FLSA or the PMWA.

3.      Higgins—who worked as a Registered Nurse ("RN") providing home health care services to Bayada's clients exclusively within the Commonwealth of Pennsylvania—initiated this action on November 30, 2016, when she filed her "Collective and Class Action Complaint" [ECF 1] (the "Complaint") against Bayada, asserting claims under the FLSA and the PMWA on behalf of herself and others similarly situated.

4.      Plaintiffs subsequently amended the Complaint, adding six newly-named plaintiffs and corresponding putative state-law class claims under the laws of Arizona, Colorado, Maryland, Massachusetts, New Jersey and North Carolina all of which are based on the same challenge to Bayada's compensation structure as applied to the FLSA Collective.  *See* Amended Complaint [ECF 132].

5.      Relevant to the FLSA Collective, on May 11, 2018, the Court granted Higgins' "Motion for Conditional Certification and Issuance of Notice" [ECF 61] under the FLSA, certifying the FLSA Collective consisting of "Home Health Care Clinicians" that included "Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers[.]" *See* Order Granting Motion to Certify Class [ECF 61] at p. 3.  The notice period is now

closed and the FLSA Opt-In Class has been established. Higgins, however, has not moved to date to certify her PMWA claims pursuant to Rule 23.

6. The factual record regarding Bayada's compensation structure relative to Higgins and the Clinicians who comprise the FLSA Collective is sufficiently developed and not subject to reasonable dispute. As part of discovery, Bayada produced for Higgins and the members of the FLSA Collective earnings statements, payroll documentation, HomeCare HomeBase reports, and email reports, as well as its companywide pay policies. Additionally, Plaintiffs deposed Rule 30(b)(6) witnesses in May and December, 2019, who testified extensively on Bayada's corporate payroll practices and policies, as well as the actual mechanisms in place to ensure that guaranteed salaries are automatically paid each and every workweek to Clinicians. Bayada in turn deposed Higgins and five of the FLSA Opt-In Plaintiffs.

7. The record is clear; it is beyond dispute that under Bayada's "salary-plus" compensation structure, Clinicians receive a guaranteed weekly salary—above the minimum salary threshold required under the FLSA (and the PMWA in relation to Higgins)—irrespective of the number of visits they perform in a given week or productivity points they earn for such visits or other activities. Clinicians are further eligible for additional "incentive" or "bonus" payments if they perform additional work above their expected productivity.

8.      For her part, Higgins was paid a guaranteed salary of at least $1,000 per week at all times relevant to her allegations.  For their part, the Clinicians in the FLSA Opt-In Class were similarly paid salaries above the required threshold to be classified as exempt at all times relevant to their claims.[2]

9.      The primary issue in this case is, thus, a legal question:  Whether Bayada's compensation structure—which provides Clinicians with a guaranteed weekly salary and the ability to earn additional compensation for work in excess of their expected productivity—satisfies the "salary basis" requirement under the FLSA (and the PMWA in relation to Higgins) where the Clinicians' accrued paid time off ("PTO") is used in limited circumstances to offset expected productivity shortfalls, but where the Clinicians' guaranteed weekly salary (when combined with such PTO) is not in fact reduced in workweeks with productivity shortfalls. *See* Amended Complaint at ¶ 24.

10.      Bayada submits that the answer to this threshold legal question is a resounding no.  While Bayada's compensation structure may not be typical of home healthcare providers, it is not unique.  Significantly, no court has found a similar compensation structure to violate the law.

---

[2]      As of January 1, 2020, the new threshold under the FLSA became $684 per week (equivalent to $35,568 annually).  *See* Final Rule: Overtime Update, U.S. Department of Labor, available at https://www.dol.gov/agencies/whd/overtime/2019/index.

11.     Because Plaintiffs' challenge to the Clinicians exemption status hinges on whether a "salary plus" compensation structure such as Bayada's violates the law, Bayada's motion for summary judgment regarding the legality of its compensation structure is ripe for disposition.  Bayada is entitled to summary judgment as to the legality of its pay policies and practices under the FLSA as well as to Higgins' PMWA claims in their entirety.

## **LEGAL STANDARD**

12.     Summary judgment is not a "disfavored procedural shortcut," but rather, an integral component of the Rules of Civil Procedure for seeking a "just, speedy, and inexpensive" determination of a matter.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (citation omitted).  It is designed to "dispose of factually unsupported claims."  *Id*. at 323-24.

13.     Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

14.     Once the moving party has carried its burden under Rule 56, its opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" in question.  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citation and quotation marks omitted).  This means that the party opposing summary judgment must do more than rest upon

mere allegations, general denials, or vague statements. *See, e.g., Trap Rock Industries, Inc. v. Local 825, Int'l*, 982 F.2d 884, 890 (3d Cir. 1992).

15.    Moreover, the beliefs, suspicions, and speculations of the plaintiff are not evidence, and a material fact dispute cannot be created out of thin air. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005) (conjecture and speculation may not defeat a motion for summary judgment).

16.    Summary judgment is also appropriate if the nonmoving party provides evidence that is merely colorable or not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

17.    There must be more than a scintilla of evidence supporting the nonmoving party, *id.* at 252, and more than some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

18.    "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party:  the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## ARGUMENT

19.     Bayada should be granted summary judgment against Plaintiff Stephanie Higgins on Counts 1 and 2 and as against the FLSA Collective.

20.     Higgins and the FLSA Collective's claims for unpaid overtime are based solely on the faulty premise that Bayada's home health Clinicians were not properly paid on a "salary basis" and, thus, were misclassified as exempt.

### Bayada's Clinicians Are Properly Classified As Exempt

21.     Individuals employed "in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime requirements and need not receive overtime wages.  29 U.S.C. § 213(a)(1).

22.     An employer may properly claim an exemption if three tests are satisfied.

- First, the employee must be paid on a salary basis (the "salary-basis test") or on a fee basis.  29 C.F.R. § 541.602; 29 C.F.R. § 541.605.

- Second, the employee must be paid at least the minimum salary level established by regulations (the "salary-level test").  29 C.F.R. § 541.600.  The minimum salary level, as of January 1, 2020, is $684 per week ($35,568 annually).

- Third, an employee must perform executive, administrative, or professional duties as established by regulations (the "duties test").  *See, e.g.*, 29 C.F.R. § 541.301 (learned professionals exemption).

23.     Significantly, Higgins (and the members of the FLSA Collective) only challenge their exemption status insofar as Bayada's compensation structure allegedly fails to meet either the salary-basis requirement or the fee-basis requirement.

24.     For purposes of the FLSA claims, the term "salary" means:

> [T]he employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a).  The PMWA similarly requires that exempt professionals be paid on a "salary or fee basis."  34 Pa. Code § 231.84.

25.     Higgins and the members of the FLSA Collective's claims fail as a matter of law and fact because they received a guaranteed weekly salary regardless of their productivity in the workweek.  Bayada properly classifies its home health Clinicians as exempt in this regard and Bayada's "salary plus" compensation structure does not violate the FLSA (or the PMWA in relation to Higgins).

**Bayada Pays Clinicians Based On A Salary Plus Compensation Structure, Which Satisfies The Salary-Basis Test**

### *Bayada's Compensation Structure*

26.     Specifically, Bayada pays its home health Clinicians pursuant to a written policy titled "37-2278 Employment Tracks, Compensation and Benefits for Home Health Filed Employees" (hereinafter, the "Compensation Policy").

27.     The Compensation Policy makes clear that there are four employment "tracks" for home health Clinicians:  (a) Guaranteed Full-Time, (b) Guaranteed Part-Time with Benefits, (c) Guaranteed Part-Time, and (d) and Per Diem.

28.     Under the Compensation Policy's terms, the compensation for the home health Clinicians in the first three "tracks"—*i.e.*, Guaranteed Full-Time, Guaranteed Part-Time with Benefits, and Guaranteed Part-Time—consists of a "weekly guaranteed pay *plus* unit pay rate for additional pay units worked above expected productivity."[3]

29.     The home health Clinicians in the first three "tracks" also are eligible to earn Paid Time Off ("PTO") that "accrued weekly . . . [e]qual to four (4) weeks per year less any 'no pay units' taken."

30.     Under the Compensation Policy, "No Pay" units are defined as the number of units equating to a full day taken off without pay (for a full-time employee, this would be eight (8) units.  For a part-time employee, it would be the daily number of visits expected times 1.33).

31.     In sum, Bayada pays its Home health Clinicians—in the first three "tracks"—their weekly guaranteed salary as well as additional compensation if they exceed their weekly productivity points expectation.

---

[3]     Plaintiffs do not challenge here Bayada's "per diem" employees paid pursuant to the fourth track.

32.     In addition to its Compensation Policy, Bayada maintains a corporate written compensation policy relative to its Clinicians titled "Day No[-]Pay Payroll Procedures."

33.     The Day No-Pay Payroll Procedures policy states: "[d]ay no [p]ay transactions are for use on a limited basis . . . [t]he transactions are intended for a guaranteed (*i.e.*, salaried) worker who has used all of their available time but is unable to work an entire day."

34.     The Day No-Pay Payroll Procedures policy also states that: "[a]s a salaried worker, if the employee works any part of a regularly scheduled day, the employee needs to be paid for the day."

35.     The Day No-Pay Payroll Procedures policy establishes the ***only*** instance where a Clinician's guaranteed weekly salary can be reduced.

36.     Bayada pays its home health Clinicians—nationwide—consistent with the terms of its Compensation Policy.

37.     Each week Bayada's Accounting Department conducts audits to catch any errors in payroll that have been submitted from field offices.

38.     Although the Compensation Policy contemplates and measures "productivity points," it does so for the purpose of establishing a threshold after which Clinicians employed in the first three employment tracks are paid additional

compensation; they are not used to reduce the amount of the guaranteed weekly salary paid to Clinicians.

39.     Although the Compensation Policy contemplates and measures "units" and "benefit credit hour" units, these measurements do not affect the weekly guaranteed salary paid to Clinicians; rather, they are used exclusively to determine eligibility for additional compensation, eligibility and/or accrual of paid time off ("PTO"), and eligibility to participate in Bayada's group health and welfare and retirement plans.

### Bayada's Compensation Structure Complies With The FLSA

40.     Here, the well-established record shows that Bayada pays Clinicians a weekly guaranteed salary which is not subject to reduction on the basis of productivity in the workweek:  Clinicians receive guaranteed salaries for each workweek, plus additional, incentive pay for completing tasks above expected productivity.  Such a "salary-plus" compensation structure is lawful under the FLSA (and the PMWA in relation to Higgins).

41.     The U.S. Department of Labor ("DOL") has defined payment on a "salary basis" to mean that an employee regularly receives a predetermined amount of compensation each pay period regardless of the amount of work performed "which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).

42.     An exempt employee must generally receive his or her full salary for any workweek in which the employee performs any work, regardless of the number of days or hours worked in that workweek.  29 C.F.R. § 541.602(a)(1).

43.     There are, however, exceptions to the "no-docking" rule.  If the employer has a sick pay or disability policy and the employee misses one or more full days of work due to sickness or illness, the days missed need not be paid.  29 C.F.R. § 541.602(b)(2).  And if the employee takes one or more full days off from work due to personal reasons, other than sickness or disability, the days taken off need not be paid.  29 C.F.R. § 541.602(b)(1).  Accordingly, while an employer cannot deduct pay for partial-day absences, an employer can deduct pay for one or more full days when an employee is unable or unwilling to work.

44.     Additionally, an employer may provide an exempt employee with additional compensation without violating the salary-basis rule or otherwise losing the exemption.  *See* 29 C.F.R. § 541.604 (Minimum guarantee plus extras).  "Such additional compensation may be paid on *any* basis (*e.g.*, flat sum, bonus payment, straight-time hourly amount, and time and one-half or any other basis), and may include paid time off."  *Id.* (emphasis added).

45.     Bayada pays Clinicians an agreed-upon and guaranteed amount each week regardless of the amount of time they spend working.  To provide an incentive for Clinicians to complete additional visits—after all, patient demand can

-13-

be unpredictable—Bayada offers additional compensation, which kicks in after the Clinicians meet their expected productivity. Measuring productivity as a mechanism to increase pay is permissible. "[A]s long as there is a . . . guaranteed salary . . . fluctuations based on productivity [do] not affect the salary basis test." *Havey v. Homebound Mortg., Inc.*, No. 2:03-cv-313, 2005 WL 1719061, 2005 U.S. Dist. LEXIS 27036, at *15 (D. Vt. July 21, 2005) (holding that employer's practice of giving additional pay to underwriters who chose to process more loans did not contradict the underwriters' exempt status); *see also* 29 C.F.R. § 541.604 (Minimum guarantee plus extras).

46.     Moreover, while pay can increase due to productivity above expectation, it does not decrease due to productivity below expectation. Clinicians receive a set, guaranteed amount for each and every week that they work, which is not subject to reduction as a result of any variation in productivity. The Policy thus complies with the salary-basis test of the FLSA (and the PMWA in relation to Higgins).

47.     Plaintiffs' invocation of Paid Time Off ("PTO") to support their claims is a red herring. The FLSA does not require an employer to provide PTO, and the salary-basis test does not delimit the circumstances under which PTO may be taken to offset for absence or productivity shortfalls.

48. Though Clinicians are subject to reductions in their accrued PTO accounts in workweeks that they are below expected productivity, they always received their guaranteed weekly salary.

49. And Bayada's written policy, consistent with the FLSA (and the PMWA in relation to Higgins), only permits deductions to pay when PTO is unavailable and only for whole day absences when an employee is out for sickness/illness or for personal reasons. Bayada does not reduce pay for partial-day absences during the workweek.

50. Moreover and significantly, the best evidence regarding any pay deductions—*i.e.*, the weekly pay records and the productivity reports—have been produced for each Clinician during the relevant time period. And these records are devoid of any evidence that Bayada made impermissible pay deductions.

51. Accordingly, it is beyond dispute that Clinicians receive their guaranteed salaries each workweek regardless of the amount of work they perform, which under the FLSA (and the PMWA in relation to Higgins) means that they are paid on a "salary basis."

52. Specifically, Stephanie Higgins' earnings statements—the best evidence showing how she was compensated in fact by Bayada—establish that Bayada paid her consistent with its Compensation Policy and, thus, consistent with

-15-

the salary-basis rule.[4]  Higgins received a minimum, guaranteed salary each workweek during the relevant period of her employment with Bayada, which spanned 147 weeks.  Her pay was *never* reduced for failure to meet her productivity expectation.  As such, Higgins was paid on a "salary basis" under the FLSA and PMWA[5] and appropriately classified as exempt from overtime requirements.

53.    Plaintiffs' additional argument that "[i]f Plaintiffs or other Clinicians exhaust their available PTO hours, Defendant does not pay Plaintiffs or its other Clinicians their full salary or otherwise compensate them for the gap in productivity, instead paying only for the actual points they earned" (Amended Complaint ¶ 24) is simply incorrect and devoid of any factual support in the record.

---

[4]    Higgins also met the other requirements necessary for exempt status.  She met the "duties test" under 29 C.F.R. § 541.301(e)(2), because she had a degree in nursing, had at all relevant times been licensed as a Registered Nurse, and her duties and responsibilities were consistent with her position as a Registered Nurse.  She was also paid a guaranteed salary that was at all times greater than the minimum level of $455 per week set by 29 C.F.R. § 541.600 (as applicable during her tenure).

[5]    Both the PMWA and the FLSA do not require overtime pay for "any employee engaged in a bona-fide executive, administrative, or professional capacity" who is paid on a salary basis.  *Compare* 43 P.S. § 333.105(a)(5) *with* 29 U.S.C. § 213(a)(1).  And since the provisions of the FLSA and the PMWA are the same for the exemption for a professional employee, the analysis under the FLSA applies equally to the PMWA.  Accordingly, if Higgins' claims fail under the FLSA, they fail under the PMWA as well.

The record evidence establishes that this allegation is completely inaccurate.  If Clinicians exhaust their PTO, the only instance in which Bayada would deduct pay is for whole-day absences in circumstances where no work was performed consistent with the FLSA (and the PMWA in relation to Higgins).

54.    As to the loss of exemption status, the employer must engage in "an actual practice of making improper deductions." 29 C.F.R. § 541.603(b).  And if an employer does have an actual practice of making improper deductions, the employees' exempt status is only lost "during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." *Id.*  Thus, only if an employer has an "actual practice" of improper deductions, employees similarly situated to those experiencing actual improper deductions may lose exempt status, but only during the time period of the actual improper deductions. *Id.*  This represents a significant departure in the law, where previously exempt status could be lost with a policy that created merely a "significant likelihood" of such improper deductions.

55.    The only policy permitting deductions to pay—Bayada's "day no pay" policy—permits only *proper* deductions.  As the policy states, "[d]ay no [p]ay transactions . . . are intended for a guaranteed (*i.e.*, salaried) worker who has used all of their available [PTO] but is unable to work an entire day . . . [a]s a

salaried worker, if the employee works any part of a regularly scheduled day, the employee needs to be paid for the day." The policy, thus, prohibits partial-day deductions and applies only when a Clinician has exhausted PTO and is *unable* to work, either for a personal reason or due to sickness/illness. *See* 29 C.F.R. § 541.602(b)(1), (2). It is thus consistent with the salary-basis rule.

56.     At bottom, Plaintiffs cannot successfully challenge Bayada's classification of Higgins and the FLSA Collective as exempt employees. Because exempt employees are not entitled to overtime, Higgins' claims (under both the FLSA and PMWA) for unpaid overtime fail as a matter of law and fact. Similarly, to the extent that FLSA Collective's claims are predicated solely on the notion that Bayada's compensation structure destroys the salary-basis requirement relative to the Clinicians' exemption status, those claims fail as well.

## CONCLUSION

For the foregoing reasons, Bayada respectfully requests that this Court grant summary judgment in its favor and against named Plaintiff Stephanie Higgins and the FLSA Collective.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By:     */s/Thomas G. Collins*
         Thomas G. Collins, Esquire
         I.D. #75896
         Adrian Zareba, Esquire
         I.D. #318649
         409 North Second Street, Suite 500
         Harrisburg, PA  17101-1357
         (717) 237-4800
         e-mail:  thomas.collins@bipc.com
         e-mail:  adrian.zareba@bipc.com

         Gretchen Woodruff Root, Esquire
         I.D. #309683
         501 Grant Street, Suite 200
         Pittsburgh, PA  15219-4413
         (412) 562-8800
         e-mail:  gretchen.root@bipc.com

         *Counsel for Defendant,*
         *Bayada Home Health Care, Inc.*

Dated:  September 25, 2020

## <u>CERTIFICATION OF NON-CONCURRENCE</u>

I, Thomas G. Collins, counsel for Bayada in the above-captioned matter, have conferred with counsel for Plaintiff, Teresa M. Becvar, Esquire, in regard to Defendant's Motion for Summary Judgment, and Plaintiff's concurrence was <u>not</u> given.

<div align="center" style="margin-left:40%">

<u>/s/Thomas G. Collins</u>

*Counsel for Defendant,*
*Bayada Home Health Care, Inc.*

</div>

Dated:  September 25, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of Defendant's Motion for Summary Judgment was transmitted to the Court electronically for filing and for electronic service upon the following attorneys of record this 25th day of September, 2020:

David J. Cohen, Esquire
Stephan Zouras, LLP
604 Spruce Street
Philadelphia, PA  19106
dcohen@stephanzouras.com

James B. Zouras, Esquire
Teresa M. Becvar, Esquire
Ryan F. Stephan, Esquire
Haley R. Jenkins, Esquire
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL  60606
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

*/s/Thomas G. Collins*

*Counsel for Defendant,*
*Bayada Home Health Care, Inc.*