# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE HIGGINS, for herself and all others similarly situated, *et al.*, | : | Civil No. 3:16-CV-02382 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BAYADA HOME HEALTH CARE, INC., | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is an alleged unpaid overtime wages case brought by Plaintiff Stephanie Higgins ("Higgins"), on behalf of herself and all others similarly situated, who was formerly employed as a registered nurse by Defendant Bayada Home Health Care, Inc. ("Bayada").  Higgins alleges that, inter alia, she was not paid overtime wages to which she was otherwise entitled in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  Currently before the court are Bayada's motion for summary judgment and uncontested motion for oral argument on the motion.[1]  (Docs. 157, 172.)  For the reasons that follow, Bayada's motion for summary judgment will be granted.

---

[1] The court does not see a need for oral argument in this case in light of the comprehensive and helpful briefing already completed on the motion.  The motion for oral argument will therefore be denied.  (Doc. 172.)

PROCEDURAL AND FACTUAL BACKGROUND[2]

Higgins initiated this action by filing a collective and class action complaint against Bayada on behalf of herself and all others similarly situated on November 30, 2016.  (Doc. 1.)  On May 11, 2018, the court granted Higgins' motion for conditional certification and notice under 29 U.S.C. § 216(b), giving FLSA collective members 75 days from the notice mailing date to opt-in to this litigation.[3]  (Doc. 61.)  On October 11, 2018, Higgins sought leave to amend the complaint to add additional named Plaintiffs and assert state law Rule 23 class claims under the overtime laws of New Jersey, Massachusetts, Maryland, Colorado, Arizona, and North Carolina.  (Docs. 82, 83.)  On December 2, 2019, the court granted Higgins' motion to amend.  (Docs. 130, 131.)  That same day, Higgins filed an amended complaint which included additional named Plaintiffs, Meghan Taneyhill, Shiela Levesque, Margaret Magee, Sherri Kramer, Shelly Neal, and Yvette Marshall (collectively, "Plaintiffs"), and six state law minimum wage claims in states where Bayada operates.  (Doc. 132.)  Thereafter, Bayada timely

---

[2] In considering Bayada's motion for summary judgment, the court relied on the uncontested facts, or where the fact were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Higgins as the nonmoving party in accordance with the relevant standard for deciding a motion for summary judgment.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

[3] This time period has expired and the members of the FLSA collective are established and final.

filed an answer to the amended complaint.  (Doc. 133.)  On December 3, 2019, this matter was reassigned to the undersigned.

On January 28, 2020, Bayada requested leave to file an early motion for summary judgment, which was granted by the court on May 15, 2020.  (Docs. 137, 148.)  Bayada filed the instant motion for summary judgment on September 25, 2020.[4]  (Doc. 157.)  Higgins filed a brief in opposition, an answer to Defendants' statement of facts, and an additional statement of material facts.[5]  (Docs. 165, 166.) Bayada timely filed a reply brief.  (Doc. 169.)  In addition, Bayada filed an unopposed motion for oral argument on the motion for summary judgment.[6]  (Doc. 172.)  Thus, the motion for summary judgment is now ripe for review.

The material facts in this case are not in dispute.  Plaintiffs are former "clinicians" employed by Bayada, consisting of "Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers."  (Doc. 165, ¶ 4.)  Bayada is a non-profit company that provides a range of clinical care and support services for patients within their homes.  (*Id.*

---

[4] Bayada seeks summary judgment with respect to Higgins' claims in their entirety and seeks judgment as a matter of law that its compensation structure does not violate the FLSA.  (*See* Doc. 157.)

[5] The court notes that Higgins' statement of material facts is not permitted under the local rules, and that Bayada has objected to the inclusion of this statement in the record.  (*See* Doc. 165, pp. 62–73; *see also* Doc. 171.)  The court disregards this portion of Higgins' filing.

[6] As discussed above, the court does not perceive a need for oral argument on this motion in light of the thorough and helpful briefs which have already been submitted.

¶ 1.)  Higgins represents a conditionally certified class of Plaintiffs who allege that Bayada illegally classified clinicians as overtime exempt under the FLSA, and improperly denied them overtime pay.  (*Id.* ¶¶ 2–3.)  The other named Plaintiffs represent putative classes under numerous related state laws based on the same claims.  (Doc. 132, ¶¶ 1, 3.)

Bayada's compensation structure for its clinicians is set forth in a written policy entitled "37-2278 Employment Tracks, Compensation and Benefits for Home Health Field Employees" which is applicable to clinicians nationwide. (Doc. 159-2; Doc. 165-3, p. 13.)[7]  This policy states that Bayada "offers four tracks of employment with corresponding compensation and benefits" to its clinicians. (Doc. 159-2, p. 2.)  These tracks include guaranteed full-time, guaranteed part-time with benefits, guaranteed part-time, and per diem.[8]  (*Id.* at 3.)  Each employee, with the exception of those on the per diem track, is assigned a "productivity minimum" per week; in other words, a set number of productivity points expected to be performed in a week.  (*Id.* at 3–4.)  Employees could request an increase or decrease in their productivity point expectation that would be accompanied by a corresponding increase or decrease in pay.  (*See, e.g.*, Doc. 159-1, p. 5; Doc. 165, ¶¶ 55–56.)

---

[7] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[8] The per diem track is not at issue in this case.

According to the policy, each various task that an employee performs equates to a point value.  (Doc. 159-2, p. 2.)  For instance, "a routine visit is assigned one point; a start of care visit is assigned more than one point."  (*Id.*)  One point is roughly equivalent to 1.33 hours of work.  (Doc. 165-21, p. 8.)  Employees had the opportunity to make up lost or deficient point balances throughout the week by performing office work or additional home visits based on what worked best for their schedule.  (*See* Doc. 159-16.)  For employment tracks eligible for paid time off ("PTO"), the amount of PTO an employee may earn is tied to the amount of productivity points earned during the week.[9]  (Doc. 159-2, pp. 3−8.)  Employees could accrue PTO on a weekly basis totaling up to four weeks per year, less any "no pay" units taken.[10]  (Doc. 165, ¶ 13.)

In the event that an employee fell below their weekly point expectation, Bayada would draw from the employee's available PTO to supplement the difference between the points they were expected to earn and the points they actually earned.  (*See* Doc. 159-16.)  However, in the event that the employee did not have any remaining PTO, or the point shortage was due to a lack of available work, the employee would still receive their guaranteed salary.  (Doc. 159-16, p. 2;

---

[9] Per diem track employees are the only track ineligible for PTO.

[10] The specific formula for PTO accrual, as set forth in the policy is: "(productivity minimum times 1.33) less "no pay" units) times (.0769 per unit)."  (Doc. 159-2, pp. 3−8.)

Doc. 165-3, p. 19; Doc. 165-21, p. 14.)  In contrast, if an employee earned more

points than their expected points per week, the employee would earn additional

compensation above his or her guaranteed salary.  (Doc. 165, ¶ 13.)  PTO

deductions, if applicable, could occur regardless of the number of hours the

clinician worked per week; in other words, a clinician could work more than 40

hours in a given week and still be subject to a PTO deduction for failing to meet

his or her productivity point expectation.  (*See* Doc. 159-7; Doc. 159-8; Doc.

159-9; Doc. 159-13; Doc. 159-14; Doc. 159-17; Doc. 159-19; Doc. 159-21; Doc.

159-24.)  If this occurred, Bayada encouraged counseling and individual

assessment to find ways to make the clinician more efficient so they would meet

their weekly productivity point expectation.  (Doc. 165-3, p. 20; Doc. 165-21,

pp. 14–15.)

For employees who did not have available PTO but nevertheless wished to

have time off, Bayada maintained a policy entitled "Day No Pay Payroll

Procedures."  (*See* Doc. 170-1.)  This policy states that days without pay "are for

use on a limited basis" for guaranteed employees who have used all of their

available PTO and are unable to work an entire day.  (*Id.* at 2.)  In addition, the

policy provides that "[a]s a salaried worker, if the employee works any part of a

regularly scheduled day, the employee needs to be paid for the day."  (*Id.*)  In other

words, if an employee only works a partial day, or even completes a single task

before taking the rest of the day off, the employee must be paid their guaranteed salary for that day.  Clinicians are paid on a weekly basis, and each week, members of Bayada's accounting department review clinicians' payroll to detect any potential errors, including a possible misuse of a day no pay transaction.  (*Id.* ¶¶ 24–26.)

Plaintiffs, including Higgins, always received their guaranteed salary in accordance with Bayada's policies.  Indeed, the only deductions from Plaintiffs' guaranteed pay occurred in instances where the Plaintiff elected to take one or more entire days off when they did not have PTO available.  (*See* Doc. 159-7; Doc. 159-8; Doc. 159-9; Doc. 159-13; Doc. 159-14; Doc. 159-17; Doc. 159-19; Doc. 159-21; Doc. 159-24; Doc. 165-3, pp. 18–19; Doc. 165-21, pp. 12, 14.)  At no point was Plaintiffs' weekly guaranteed compensation reduced unless they took a full day off and did not have any available PTO to cover their absence.  (*Id.*)

### A. Named Plaintiff Stephanie Higgins

Higgins worked as a full-time employee for Bayada from September 2012 until September 2016.  (Doc. 165, ¶¶ 40, 45.)  When she first started working for Bayada, she had a 30-point weekly productivity expectation, which was eventually reduced to 25 points at her request.  (*Id.* ¶¶ 55–56.)  She testified that in most weeks, she had enough visits to meet her productivity point requirement, but that there were likely instances in which she fell below the point expectation.  (*Id.*

¶¶ 61–62.)  Higgins understood that if she did not meet her productivity point expectation for the week, her PTO would be used to supplement as needed, but that if she were low on points, she could perform other tasks to make up points.  (*Id.* ¶¶ 65–66, 83, 86.)  Higgins testified that she believed her weekly compensation would be reduced if she fell below her point expectation and did not have sufficient PTO to make up the points, but she admitted that she did not recall anyone advising her that this would happen.  (*Id.* ¶ 71.)  However, Higgins never exhausted her available PTO, and her weekly guaranteed compensation remained constant except for weeks in which she earned more points than required and received additional compensation.  (*Id.* ¶¶ 67–69, 80; *see also* Doc. 159-7; Doc. 159-8; Doc. 159-9.)

## B. Opt-In Plaintiff Judith Groop

Judith Groop worked as a full-time registered nurse for Bayada from August 2016 through July 2017.  (Doc. 165, ¶¶ 90, 92.)  Groop received guaranteed compensation of $1,200 per week and had a 25-point weekly productivity expectation.  (*Id.* ¶ 93.)  During her tenure, Groop received her guaranteed weekly compensation for every week except three.  (*Id.* ¶ 97; *see also* Doc. 159-13; Doc. 159-14.)  The first of these three weeks, Groop had begun her employment mid-week, and did not work the first two days; therefore, she was only paid for the three days she worked.  (Doc. 165, ¶ 97.)  The second of these weeks, Groop took

a week-long vacation for which she did not have sufficient PTO to cover her time off.  (*Id.*)  She was accordingly paid based on the PTO available to cover full days, and unpaid for the remaining time.  (*Id.*)  For the last of these three weeks, Groop took a day off for which she did not have sufficient PTO to cover her full-day absence, and was not paid for this one day of the week.  (*Id.*)  There is no evidence that her guaranteed compensation was reduced simply because she fell below her expected weekly productivity points and did not have available PTO.  (Doc. 159-13; Doc. 159-14.)

### C. Opt-In Plaintiff Alicia Heisey

Alicia Heisey worked for Bayada as a registered nurse from May through August 2017.  (Doc. 165, ¶ 102.)  Heisey's offer letter, dated March 31, 2017, indicated that she would be paid a "minimum weekly salary of $1,125.00" at a rate of $45.00 per productivity point, and that she could earn additional points for which she would receive additional compensation at this rate.  (*Id.* ¶¶ 104–105; *see also* Doc. 159-16.)  Her offer letter also conveyed that if she fell below her expected point minimum, she would be able to make up points elsewhere, but that if she did not, her PTO bank would make up the difference.  (Doc. 165, ¶ 106.)  In any event, the letter states that she would not be required to use PTO if there were no cases available to her.  (*Id.*)  Heisey testified that she received her weekly guaranteed compensation each week that she worked for Bayada other than one in

which she did not perform any work on a single day and did not have sufficient PTO to cover her absence.  (*Id.* ¶¶ 108–109; *see also* Doc. 159-17.)  There is no evidence that her guaranteed compensation was reduced simply because she fell below her expected weekly productivity points and did not have available PTO. (Doc. 159-17.)

### D. Opt-In Plaintiff Christine DeGrazia

Christine DeGrazia worked for Bayada as a registered nurse from December 2013 through June 2017.  (Doc. 165, ¶ 112.)  During the time period relevant to this case, DeGrazia received weekly guaranteed compensation of at least $936. (*Id.* ¶ 115; *see also* Doc. 159-19.)  However, DeGrazia testified that she usually earned more than this amount because she often earned more points than her weekly expectation.  (Doc. 165, ¶¶ 116–117.)  In no event did she recall her pay ever being reduced and there is no evidence that her guaranteed compensation was reduced because she fell below her expected weekly productivity points and did not have available PTO.  (*Id.* ¶ 116; Doc. 159-19.)

### E. Opt-In Plaintiff Bernadette Salopek

Bernadette Salopek worked for Bayada as a registered nurse from August 2008 through May 2017.  (Doc. 165, ¶ 118.)  During the time period relevant to this case, Salopek received weekly guaranteed compensation of at least $1,194.48. (*Id.* ¶ 122; *see also* Doc. 159-21.)  From November 2016 through May 1, 2017, she

took a leave of absence for which she was not paid.  (Doc. 165, ¶ 119.)  Upon

return to work, Salopek was paid as a per diem employee, although she had no

independent recollection of being on per diem status.  (*Id.* ¶ 123.)  There is no

evidence that her guaranteed weekly compensation as a full-time employee was

ever reduced because she fell below her expected weekly productivity points and

did not have available PTO.  (Doc. 159-12.)

### F.  Opt-In Plaintiff Harold Beardsley

Harold Beardsley worked for Bayada as a nurse for somewhere between 6

and 12 months from 2017 until 2018.  (Doc. 165, ¶ 124.)  Beardsley received

weekly guaranteed compensation of at least $1,410.  (*Id.* ¶ 127; *see also* Doc.

159-24.)  Beardsley testified that he did not recall any instances where his weekly

compensation was reduced for failure to satisfy his point expectation, but that

Bayada would instead draw from his PTO.  (Doc. 165, ¶ 128.)  There is no

evidence that his guaranteed compensation was reduced simply because he fell

below his expected weekly productivity points and did not have available PTO.

(Doc. 159-24.)

### JURISDICTION

Higgins alleges violations of the FLSA and various state wage laws.  (*See*

Doc. 1.)  Pursuant to 28 U.S.C. §§ 1331 and 1367, the court has jurisdiction over

these claims because they arise under the laws of the United States and because the

court has supplemental jurisdiction over the corresponding state law claims.  The

Middle District of Pennsylvania is the proper venue for this matter because all the

events giving rise to Higgins' claims occurred in this judicial district.

### STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of

the dispute "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is

not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A

dispute is genuine if a reasonable trier-of-fact could find in favor of the

nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v.

Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh

Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts

in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288

(3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher

Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence"

or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

13

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

As explained above, the parties do not dispute the material facts regarding

Bayada's compensation structure.  Bayada argues that its compensation structure is

valid as a matter of law under the FLSA.  Specifically, Bayada seeks summary

judgment regarding a central issue in this case: "Whether Bayada's compensation

structure—which provides clinicians with a weekly guaranteed salary and the

ability to earn additional compensation for work in excess of their expected

productivity—satisfies the 'salary basis' requirement under the FLSA and the

PMWA where the clinicians' accrued PTO is used in limited circumstances to

offset expected productivity shortfalls, but where the clinicians' weekly guaranteed

salary, when combined with such PTO, is not in fact reduced in workweeks with

productivity shortfalls."  (Doc. 162, p. 11 (cleaned up).)  Bayada argues that

because no court has found this "salary plus" compensation structure to violate the

law, and because Bayada appropriately and equally applied this structure to its

clinicians, Plaintiffs cannot demonstrate that summary judgment is inappropriate in

this case.  (*Id.* at 12.)

Plaintiffs contend that Bayada has gone to great lengths to disguise its

compensation structure as a salary, when in fact every task that a clinician

performs is measured by some point value assigned by Bayada corresponding to the amount of time that Bayada believes the task should take.  (Doc. 166, pp. 6–7.) When a clinician earns more points than their expectation for the week, they are paid more; when a clinician earns fewer points than their expectation for the week, they are paid less than their guaranteed salary and their PTO is reduced to make up the difference.  (*Id.* at 7.)  Plaintiffs contend that forcing clinicians to "pay back" their earned PTO for failing to satisfy the arbitrary metrics assigned by Bayada is inconsistent with a salaried employee's payment scheme.  (*Id.*)  Accordingly, Plaintiffs claim that Bayada has not met its burden to prove that a claimed exemption applies to the clinicians.  (*Id.*)

The court will address these arguments in turn.

### A. The FLSA Framework[11]

Under the FLSA, employers are generally obligated to pay employees a minimum of one and a half times their rate of pay for all hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1) (2003) ("No employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above

---

[11] Bayada asserts that "'the relevant provisions of the FLSA and the [P]MWA are identical,' which means that the same analysis as under the FLSA applies equally to the PMWA."  (Doc. 162, p. 45 (citing *Mudgett v. Univ. of Pittsburgh Med. Ctr.*, No. 09-254, 2010 U.S. Dist. LEXIS 44266, at *8 n.4 (W.D. Pa. May 6, 2010)).  Higgins has not contested this assertion, and the court accordingly only sets forth the standards under the FLSA with the understanding that these provisions apply equally to Higgins' claims under the PMWA.

specified at a rate of not less than one and one-half times the regular rate at which

he is employed.").  There are, however, certain exemptions from the FLSA's

overtime pay requirement.  Specifically, employees do not have to be paid for

hours worked over forty in a week if they are "employed in a bona fide executive,

administrative, or professional capacity."  29 U.S.C. § 213(a)(1) (2003).

The FLSA grants authority to define the term "professional" to the Secretary

of Labor who has issued regulations that define and interpret § 213(a)(1).  These

regulations have the binding effect of law.  *See Auer v. Robbins*, 519 U.S. 452, 458

(1997) (holding that the FLSA grants the Secretary broad authority to define and

delimit scope of FLSA exemptions); *see generally Batterton v. Francis*, 432 U.S.

416, 425 n.9 (1977) (holding that regulations issued by administrative agency

pursuant to grant of statutory authority have force and effect of law).  To show that

an employee is an exempt "professional employee," an employer must demonstrate

that an employee earns at least $455 per week (as of the time period at issue in this

lawsuit) and meets both a "duties" test and a "salary basis" test.[12]  29 C.F.R.

§ 541.600.

Thus, to succeed on their claims for overtime pay, Plaintiffs must show that

their duties did not comport with the FLSA's definition of a bona fide

---

[12] The PMWA mirrored the federal regulations, requiring that exempt professionals be paid on a "salary or fee basis at a rate not less than $250 per week."  34 PA. CODE § 231.84(5).

"professional" employee, or that Bayada's compensation scheme treated them as hourly, rather than salaried, workers.  In contrast, to avoid paying Plaintiffs overtime, Bayada must prove both that Plaintiffs' duties were professional and that they were paid a salary in accordance with the regulations' definitions.  The parties do not dispute that Plaintiffs received at least $455 per week or that the nature of Plaintiffs' job responsibilities as clinicians meets the applicable standard for professional duties as work "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."  29 C.F.R. §§ 541.300(a)(2), 541.600.  However, Plaintiffs do dispute that they were paid on a salary basis.  Thus, the court turns to the salary basis test.

## B. Salary Basis Test

The salary basis test is meant "to distinguish 'true' executive, administrative, or professional employees from non-exempt employees, i.e., employees who may be disciplined by 'piecemeal deductions from . . . pay.'"  *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir. 2000) (quoting *Auer v. Robbins*, 519 U.S. 452, 456 (1997)). As the Court of Appeals for the Third Circuit has explained generally:

> Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to

it.  With regards to hourly employees, it is the employer who decides the worth of a particular task, when he determines the amount to pay the employee performing it.

*Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir. 1988)).

Pursuant to regulation, the salary basis test states that:

An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

Subject to the exceptions provided in paragraph (b) of this section, an employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.  Exempt employees need not be paid for any workweek in which they perform no work.

An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

29 C.F.R. § 541.602(a)(1)–(2).

Paragraph (b) delineates specific exceptions to the "prohibition against deductions from pay in the salary basis requirement," including that "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."  29 C.F.R. § 541.602(b)(1).  The regulation provides the following example:

> [I]f an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

*Id.*

The regulations also provide a consequence for employers who make improper deductions from employees' salaries:

> An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. **An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.** The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

29 C.F.R. § 541.603(a) (emphasis added). This regulation marked a departure from existing Supreme Court precedent in *Auer v. Robbins*, 519 U.S. 452, 459–61 (1997). Under the *Auer* standard, an employer could not claim the salary basis exemption "if there is either an actual practice of making . . . deductions [based on variations in quality or quantity of work performed] *or* an employment policy that creates a 'significant likelihood' of such deductions." *Id.* at 461 (emphasis added).

The current regulations specify that an actual practice of making improper deductions is required and omit *Auer*'s conclusion that a "significant likelihood" of deductions violates the salary basis test. *See Escribano v. Travis Cty.*, 947 F.3d 265, 274 (5th Cir. 2020); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847–48 (6th Cir. 2012) (citing *Baden-Winterwood v. Life Time Fitness*, 566 F.3d 618 (6th Cir. 2009)).

## C. Bayada's Compensation Structure Does Not Violate the FLSA.

The dispute in this case centers on whether Bayada's practice of deducting PTO from clinicians' leave banks when they do not meet their weekly productivity point expectation constitutes an improper deduction which would cause Bayada to lose the professional employee exemption for its clinicians.

The court notes that the Third Circuit has not had the opportunity to consider this issue. However, courts that have considered this issue have found that fringe benefits, such as PTO, to which employees are not otherwise entitled, are separate and distinct from an employees' salary. *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 705–06 (10th Cir. 2012) (holding that the prohibition against pay docking for an employee working less than an 8 hour day "does not extend to non-monetary compensation such as vacation time or sick leave"); *Paul v. UPMC Health Sys.*, No. 06-1565, 2009 U.S. Dist. LEXIS 19277, at *26 (W.D. Pa. Mar. 10, 2009) (noting that there is "a distinction between deductions from base-pay

salary and deductions from fringe benefits") (citations omitted); *Wolfslayer v. IKON Office Solutions, Inc.*, No. 03-6709, 2004 U.S. Dist. LEXIS 22625, at *20 (E.D. Pa. Nov. 8, 2004) (holding that "'compensation' and 'amount' in 29 C.F.R. § 541.118(a) refer only to base pay salary, which is distinct from fringe benefits like sick or vacation time"); *Caperci v. Rite Aid Corp.*, 43 F. Supp. 2d 83, 92–93 (D. Mass. 1998)[13] (finding that "as long as at least a portion of the employee's compensation is a predetermined amount that is paid weekly or less frequently and is not subject to reduction, the employee will be paid on a salary basis even if the employee is also eligible to receive other forms of compensation that are subject to reduction"); *Aiken v. County of Hampton, S.C.*, 977 F. Supp. 390, 397 (D.S.C. 1997) ("Accrued leave and holiday pay are not a part of the predetermined pay Plaintiffs receive each workweek. Rather, they are fringe benefits Plaintiffs receive and their reduction is not equivalent to a reduction in pay.  A reduction in paid leave time does not affect an employee's status as a salaried employee."); *Barner v. City of Novato*, 17 F.3d 1256, 1261–62 (9th Cir. 1994) ("Thus a reduction in the paid leave time does not affect the Plaintiffs' status as salaried employees."); *York v. City of Wichita Falls, Tex.*, 944 F.2d 236, 242 (5th Cir. 1991) (deductions from "sick or vacation leave on an hourly basis . . . do not establish that a person is paid

---

[13] The court is cognizant of the fact that this case and the ones that follow were decided before the Department of Labor ("DOL") regulations overturned a portion of *Auer*.  However, the court relies on these cases for principles unaltered by the 2004 DOL regulations.

on a wage basis"); *Int'l Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.*, 720 F. Supp. 1230, 1232 (E.D. Va. 1989), *aff'd*, 912 F.2d 463 (4th Cir. 1990) ("While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary.").

The Department of Labor ("DOL") has issued opinion letters which corroborate this conclusion.[14]  *See, e.g.*, DOL Wage and Hour Opinion Letter (Jan. 16, 2009) ("Employers can, however, make deductions for absences from an exempt employee's leave bank in hourly increments, so long as the employee's salary is not reduced.  If exempt employees receive their full predetermined salary, deductions from a leave bank, whether in full day increments or not, do not affect their exempt status." (citing 69 Fed. Reg. 22,122, 22,178 (Apr. 23, 2004); Wage and Hour Opinion Letter February 18, 1999)); DOL Wage and Hour Opinion Letter (Sept. 14, 2006) ("Where an employer has a bona fide benefits plan (e.g., vacation time, sick leave), it is permissible to substitute or reduce the accrued leave in the plan for the time an exempt employee is absent from work, whether the absence is a partial day or a full day, without affecting the salary basis of payment, if the employee nevertheless receives payment of his or her guaranteed salary.

---

[14] While not binding authority, opinion letters from the DOL "are entitled to great weight when they interpret the DOL's own (ambiguous) regulations."  *McBride*, 688 F.3d at 705 (quoting *In re Wal-Mart Stores, Inc., Fair Labor Standards Act Litig.*, *MDL 1139 v. Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184 (10th Cir. 2005)).

Where the employee's absence is for less than a full day, payment of the employee's guaranteed salary must be made, even if an employee has no accrued benefits in the leave plan and the account has a negative balance.") (citing DOL Wage and Hour Opinion Letter (Jan. 7, 2005)).  Accordingly, deductions from a leave bank, such as PTO, when an employee is absent from work do not affect the employer's ability to claim an exemption.

In addition, several cases interpreting employer policies similar to that at issue in this case have found that the policies do not violate the FLSA.  *See, e.g.*, *McBride*, 688 F.3d at 705–06 (finding no FLSA violation where the employer's policy did not allow for salary deduction under any circumstance; if all of the employee's "accrued leave had been deducted, no further penalty would have been imposed"); *Caperci*, 43 F. Supp. 2d at 91 (finding that "an internal accounting charge" taken against an employee's "regular" pay from his vacation pay account that did not "cause a reduction of or otherwise affect [Plaintiff's] gross compensation" did not violate the FLSA); *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1070 (7th Cir. 1997) ("Even if [Plaintiff] had chosen not to make up this time before taking it off, her salary would not have been reduced.

Instead, she would have been issued a check in the same amount as always, and she would have had one fewer day of sick leave or personal leave.").[15]

The court notes that Plaintiffs have cited two cases, *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002) and *Oral v. Aydin Corp.*, No. 98-cv-6394, 2001 U.S. Dist. LEXIS 20625 (E.D. Pa. Oct. 31, 2001), in support of their position that they were actually hourly employees, rather than salaried. The court finds that neither of these cases alter the outcome of this case. *Elwell* involved home health care nurses who were paid on a fee basis, and also received hourly compensation for visits that lasted more than two hours. 276 F.3d at 835. The Sixth Circuit found that the regulations governing fee basis payment schemes did not permit a hybrid payment structure, i.e., payment of a fee per visit plus hourly compensation, because the employee must be paid for a completed task "regardless of the time required for its completion." *Id.* at 838 (quoting 29 C.F.R. § 541.313(b)). In addition, the Sixth Circuit recognized that the salary basis

---

[15] The court recognizes that the above-cited authorities are not binding, and in many cases, are slightly distinguishable from the present case. Specifically, many of the above-referenced cases involve employers with policies that deduct fringe benefits for an employee opting to take a partial or full day's absence, rather than a failure to meet a weekly point expectation. However, the court does not find this distinguishing feature sufficient to render the cases unhelpful; the guiding legal principles upon which they were decided can be applied to this case. Moreover, in the absence of controlling authority on the issue presented, the court finds these cases to be persuasive and useful in deciding this case. Indeed, the parties have not cited, and the court has not independently found, any authority addressing the precise circumstances in this case. Many of the cases dealing with home health care companies involve employees paid on a fee basis, rather than the salary basis presented here.

regulation, which applies to the instant case, but was not implicated in *Elwell*, explicitly ***permits*** hybrid compensation schemes since the regulation provides that "additional compensation besides the salary is not inconsistent with the salary basis of payment."  *Id.* at 838–39 (citing 29 C.F.R. § 541.118(b) recodified in 2004 as 29 C.F.R. § 541.604).  Thus, Plaintiffs' reliance on *Elwell* is misplaced, and indeed appears to support the validity of Bayada's compensation structure.

Likewise, *Oral* is inapplicable to this case because it was decided based on the now-defunct Supreme Court opinion in *Auer*.  In *Oral*, the court found that "the class of opt-in plaintiffs . . . face[d] a threat that their pay would be docked for a partial day absence unless they used sick or vacation leave to cover the absence." 2001 U.S. Dist. LEXIS 20625, at *22.  Thus, the *Oral* court applied the "significant likelihood" of improper deductions test and did not examine whether the employer had an actual practice of making improper deductions, finding that this question presented an issue for the jury to decide.  *Id.* at *22–23.  As explained above, the current regulations specify that an actual practice of making improper deductions is required and omit *Auer*'s conclusion that a "significant likelihood" of deductions violates the salary basis test.  *See Escribano*, 947 F.3d at 274; *Orton*, 668 F.3d at 847–48 (citing *Baden-Winterwood*, 566 F.3d at 618).  There is no dispute of material fact regarding whether Bayada actually made improper

deductions that would preclude the entry of summary judgment in this case. Thus, the court finds that *Oral* also does not affect the outcome of this case.

Finally, the fact that Bayada based its bonus payments and point system on an hourly wage metric does not defeat the salary basis test. The regulations explicitly state that:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, an exempt employee guaranteed compensation of at least $725 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $210 per shift without violating the $684-per-week salary basis requirement.

29 C.F.R. § 541.604(b). In addition, the regulations allow a salary basis employee to earn additional compensation, which "may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off." 29 C.F.R. § 541.604(a). Thus, Bayada does not lose its exemption merely because its employees' earnings are computed on an hourly basis. In addition, Plaintiffs have not alleged, and the court does not discern, that the reasonable relationship test has not been satisfied. Therefore, the

court finds that Bayada's computation of its employees' earnings on an hourly basis does not void its exemption.

It is without question that if Bayada maintained a practice of requiring an employee's salary to be reduced for failure to meet their weekly expected productivity points when their PTO bank was empty, it would not qualify for the professional employee exemption under the FLSA. *See Wolfslayer*, 2004 U.S. Dist. LEXIS 22625 at *20 n.5 (collecting cases). However, that is not the practice presented in this case. Rather, Bayada maintained a practice of ***not*** reducing clinicians' weekly compensation below their guaranteed amount even if they did not meet their productivity points expectation and even if the employee did not have any remaining PTO. An employee's guaranteed weekly compensation was only subject to reduction in the event that an employee was absent for an entire day of work and lacked sufficient PTO to cover the absence—a practice which is wholly consistent with the FLSA's requirements and the regulations. *See* 29 C.F.R. § 541.602(b). Bayada's practice is corroborated by Plaintiffs' pay stubs and Plaintiffs have not produced any evidence that Bayada deviated from this practice in any instance.

Bayada's practice was to reduce clinicians' available PTO when the clinician failed to meet their expected weekly productivity point figure. While a failure to meet a points expectation is not an absence from work, as described in

the above-cited caselaw, the court finds that the effect of falling below the point

expectation can be construed as equivalent to an absence.  Just as the employers in

the above-cited cases expected that their employees would be present at work for a

certain number of hours per day or week, Bayada expected its employees to earn a

certain number of points per week.  A failure to meet these expectations may be

accompanied by a decrease in fringe benefits, provided that the employer in no

event reduces an employee's salary.  Bayada provided ample opportunity for

clinicians to make up missing points and offered counseling and coaching

opportunities for clinicians that consistently fell below their weekly productivity

metrics.  For clinicians who were unable to consistently meet their productivity

metrics, they could request a reduction in their weekly point expectation, subject to

a corresponding decrease in salary.

Whether Bayada fostered, permitted, or turned a blind eye to a belief,

culture, or perception among clinicians that their weekly compensation may be

reduced in instances where they lacked PTO and fell below their expected

productivity points is no longer relevant for the court's consideration.  *See*

*Escribano*, 947 F.3d at 274; *Orton*, 668 F.3d at 847–48 (citing *Baden-Winterwood*,

566 F.3d at 618).  The court is simply concerned with whether Bayada maintained

an actual practice of reducing clinicians' salaries once they fell below their weekly

expected productivity points and did not have any remaining PTO to supplement.

28

In this case, it is clear from the record that Bayada did not maintain such a practice. Therefore, the court finds that Bayada's compensation structure fits within the FLSA's salary basis test and qualifies for the professional employee exemption from overtime pay.  Summary judgment is accordingly appropriate and will be granted.

## CONCLUSION

For the foregoing reasons, the court will grant the motion for summary judgment and deny the motion for oral argument.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 22, 2021